JUDGE DUVALL
delivered the otinion op the court:
The appellees brought this action on a note purporting to have been made to them by Staples, Jones, and Ratcliffe.
Ratcliffe answered, setting forth three separate grounds of defense.
1. That he did not execute the note in manner and form as stated in the petition.
2. That the note was presented to him with the name of Staples as principal, and Michael Parrish as surety, written in the body of the note; and, being so presented, he (Ratcliffe) signed the same as co-surety with Parrish, and after he had signed it the name of Parrish was stricken out, and that of Tho. Jones inserted, without his knowledge or consent.
3. That he never signed the note with Jones as co-surety thereon, but that he signed the same as co-surety with Parrish, whose name was in the body of the note when he (Ratcliffe) executed it.
The appellees demurred to the answer, and the demurrer was sustained as to the second and third paragraphs, and overruled as to the first.
Ratcliffe subsequently filed an amended answer, in which he stated, in substance, that Parrish and himself were on a note as surety for Staples, payable to the appellees, and the note sued on was brought to him with the name of Staples as principal, and M. Parrish and J. Ratcliffe as sureties written in the body of it, and the same was intended to be a renewal of the former note described; and it was signed by Ratcliffe, with the express understanding and agreement between him and Staples, that this was a renewal of the former note, and that Parrish was to sign it as surety with him, of which the plaintiffs had full knowledge. But, with the knowledge of plaintiffs, the note was changed, and the name of Parrish stricken out, and *61 that of Tho. Jones inserted, without the knowledge or consent of Ratcliffe.
The a,ppellees demurred to the amended answer, and the demurrer was overruled.
Jones also answered, denying that the note sued on was his act and deed.
The testimony relating to the alleged alteration of the note, as stated in the bill of exceptions, is substantially this: Staples proved that Parrish and Ratcliffe were his sureties on a note to the insurance company for $400, and it was agreed that if he would pay $100 he might renew with those sureties. The secretary of the company accordingly filled up a note for $300, with the names of Parrish and Ratcliffe as sureties. Witness saw the two persons mentioned about this time, and they agreed to sign the note as his sureties, provided he would pay the $100, and witness and Parrish so informed the secretary, and the note was then filled up by him, as to amount and date, and the names of said Parrish and Ratcliffe inserted in the body of it. With the paper thus filled up, witness went to Ratcliffe, who signed his name at the bottom of the note, leaving room above his signature for the two other names, with a distinct understanding that Parrish was afterwards to sign the note as co-surety. Witness wished to return the note to the office, and not seeing Parrish immediately, he called oh Jones to sign the note, who did so, and witness took the note back to the insurance office, and the clerk struck out the name of Parrish from the body of it and inserted that of Jones, and signed witness’ name as principal — he not being able to write.
Martin proves that he was the clerk of the company; that he received the note without any notice of any agreement between Ratcliffe and Staples that Parrish was to sign it; that the note was filled up with the names of Parrish and Ratcliffe inserted in the body of it, at the request of Standes; and when Staples brought it back to the office after it had been signed by Ratcliffe and Jones, the name of Parrish was stricken out, and that of Jones inserted in the body — this was done without the knowledge of Ratcliffe.
A verdict and judgment having been rendered against Rat- *62 cliffe and Jones for the amount of the note, they have appealed to this court.
It is a well settled principle, applicable to all cases of this kind, that if a party sign a blank paper, on which a note is to be drawn, and intrust it to another, he thereby confers an implied authority upon the latter to fill it up at his discretion, not only with the amount, date, and time of payment, but with the names of any additional obligors, or other parties. And the party signing the blank instrument will be bound upon it, when completed, in the hands of the holder, whatever may have been his agreement with the person so trusted, and to whatever extent the latter may have violated the agreement, or have exceeded Irjs implied authority, provided the holder had no notice either of the agreement or of its breach.
Upon this principle it is clear, therefore, that if, in the case before us, the note had been blank as to the names of the sureties when signed by Ratcliffe, and he had been induced to sign it upon the express condition that Parrish, and he alone, was to become his co-surety, Staples might have disregarded this condition and have procured the name of Jones, or of any other party, as his other surety, and Ratcliffe would still have been bound, notwithstanding the bad faith or fraud of his principal, unless he could have shown that the payees were apprised of it before they accepted the note. If, however, the note in question was executed by Ratcliffe upon the condition mentioned, or upon any agreement or stipulation between him and Staples to the same effect, and the appellees had notice of it before the note was delivered to them, Ratcliffe is certainly-discharged from liability, and would have been if no name had been inserted in the body of the instrument.
It becomes important, therefore, to determine the nature and legal effect of the agreement as proved, and which is relied upon to defeat the recovery in this case.
It is not pretended that any arrangement was made by the appellees directly with Ratcliffe in regard to the transaction. The only agreement to which the former were parties, was that Staples might renew his note by paying $ 100, and by giving them a note for the balance, with the same sureties, and *63 this certainly did not amount to a stipulation between them and the other parties, or either of them, that they would not accept a note with other obligors whom they might consider equally good for the amount. But it is insisted that the appellees were afterwards informed by Staples and Parrish that Ratcliffe and Parrish had agreed to sign the new note as sureties, provided the $100 was paid on the debt for which they were already bound. We admit that such is the proof, but we deny the legal consequences which, it is argued, result from it. The proof on this subject, whether considered by itself, or in connection with the fact that the names of the two persons who had thus promised to execute the note, as sureties, were inserted in the body of the note, by the appellees, before its execution, cannot with any propriety be so construed as to import an agreement or contract between Staples, Parrish, and Ratcliffe, that they, and they only, were to execute the contemplated note, or that each was to execute it only upon the condition that the others should, and that each was to be bound upon the same condition, and upon no other, and that of all this the appellees were apprised before it was either signed or delivered. On the contrary, the facts referred to show nothing-more than a simple proposition by the appellees to Staples, that his note should be renewed upon his payment of part of the debt, and upon his giving a note for the residue with the same sureties. They were afterwards told that the money would be paid and the new note given. Were they precluded, by what had occurred, from accepting any other security than the identical one spoken of? W as it a breach of faith on their part to accept a note with another name in lieu of either of those proposed, such as should be held to operate as a discharge of the party who had first signed, but who had made no stipulation or agreement, so far as the payees knew, that his liability was to depend upon the execution of the note by the other two? We have been referred to no authority which sustains the position contended for, and the doctrine is certainly not sustained by principle, or by. any well founded rule of commercial policy.
The appellees had a perfect right, in view of all the facts *64 and circumstances proved, to accept the note which was tendered by Staples in renewal of his original note, whether it had contained all, or any, or none, of the names they had agreed to take. Similar transactions are of every day’s occurrence in the business of the country, and contravene no principle or rule of law.
The effect of the alleged alteration of the note by the appel-lees will be briefly noticed. And from what has already been said, it is apparent that the erasure of the one name, and the insertion of another, in the body of the note, was such an alteration as must be held to be wholly immaterial.
The name erased, and that inserted, formed no part of the substance of the obligation, but was strictly matter of form merely. The instrument would have been in all respects as effectual and valid as if no name at all had been so inserted. The fact that the names were inserted was, it is true, a circumstance which the jury had a right to consider, in connection with the other evidence, in determining whether the agreement relied upon in the defense had been made ; but for every other purpose it was unmeaning and immaterial.
In 2 Parsons on Contracts, 226, it is said that “ if the alteration does not vary the meaning of the instrument, of does not affect its operation, there is no good reason why it should make the instrument void.” “ And that alteration which only does what the law would do, that is, only expresses what the law implies, is not a material alteration, and therefore would not avoid an instrument.” Numerous other authorities might be cited to the same effect. (Lisle vs. Rogers, 18 B. Mon., 528; Granite Railway Co. vs. Bacon, 15 Pick., 239 ; Langdon vs. Paul, 20 Verm., 217.)
As to the appellant, Jones, we perceive no substantial error to his prejudice. The law applicable to the facts proved was correctly stated by the court in the instructions to the jury, and we cannot say that the verdict is not sustained by the evidence.
The judgment is therefore affirmed.