CASE 33—PETITION ORDINARY—FEBRUARY 11.

## Terry and Bell vs. Hazlewood.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. An *immaterial* alteration in a bond or note will not vitiate it. (18 *B. Mon.*, 328; 1 *Met.*, 58; 5 *Mass. Rep.*, 538.) Nor will a *material* alteration, if made by a stranger to the bond or note, and without the participation of any party interested, invalidate it. (9 *B. Mon.*, 25.)

2. In a bond given by the proprietor of a tobacco warehouse in Louisville, under the act of 1859, regulating the inspection and sale of tobacco in that city, the striking out of the word " February," and insertion of the word " March," after its execution, did not affect the obligations or duties of the parties, and was therefore immaterial.

3. When defendants signed the bond, the name of Stockton appeared in the body of it, and had also been signed thereto ; and they, knowing S. to be solvent, and his signature genuine, also signed it ; but it turns out that the signature of S. was a forgery. *Held*—That these facts constituted no defense. (16 *B. Mon.*, 556 ; 4 *Watts*, 22 ; 10 *B. Mon.*, 266 ; 1 *Met.*, 58.)

T. A. MARSHALL, for appellants, cited *Greenleaf, sec.* 665, *et seq.*; 9 *B. Mon.*, 5; 4 *Dana*, 191 ; 18 *B. Mon.*, 534.)

G. A. & J. CALDWELL, on same side, cited 4 *Watts*, 21; 1 *Sess. Acts*, 1859–60, *p.* 17 ; *Lou. City Charter, art.* 4, *sec.* 5 ; *Chitty on Bills*, 100 ; 1 *Smith's Leading Cases and notes*, 458 ; 10 *B. Mon.*, 270 ; *Amer. Law Reg.*, April, 1863, *p.* 344.

DEMBITZ & BIJUR, for appellee, cited 1 *Met.*, 412 ; 2 *Litt.*, 310 ; 2 *J. J. M.*, 418 ; 16 *B. Mon.*, 559 ; 12 *Johns. Rep.*, 88 ; 8 *B. Mon.*, 498 ; 5 *Mass.*, 538 ; 2 *Johns. Rep.*, 232 ; 9 *B. Mon.*, 25, 26.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

This action was brought by appellee against W. T. Stockton and others, on a bond payable to the Commonwealth, for the proceeds of several hogsheads of his tobacco sold by said Stockton as proprietor of the Todd tobacco warehouse in the city of Louisville.

The bond was taken under an act of the Legislature "regulating the inspection and selling of tobacco in the city of Louisville." (*Sess. Acts.* 1859–60, 1 *vol.*, *p.* 17.)

By the *4th section of said act,* " the proprietors of tobacco warehouses in said city are required to enter into bond with good security, to be approved by the mayor and general council of the city, payable to the Commonwealth of Kentucky, in the sum of *ten thousand dollars,* conditioned well and truly to pay over to the planter or seller the proceeds of all sales made by them for said planter or seller ; and the injured party, if any, may sue thereon and recover by civil suit for his own benefit as in other cases for any injury," &c.

Process was only executed on appellants, and they defended the action, setting forth the several matters of defense in seven paragraphs, to the 1st, 2d, 3d, 4th, and 7th of which appellee demurred ; his demurrer was sustained to the 3d and 4th, and was overruled to the 1st, 2d, and 7th, and issues were formed on all of said paragraphs except the two which were adjudged insufficient.

In the first, appellants deny that the obligation sued on is their act and deed, or the act and deed of either of them. In the second, they deny that it was approved by the mayor and general council of the city of Louisville before the delivery and sale of the tobacco, or at any other time. The facts stated in the 5th, 6th, and 7th paragraphs were subsequently admitted by appellants, and they need not be again referred to.

The parties agreed to submit four issues of fact or interrogatories to the jury for a special verdict, and agreed that certain other facts should be taken and considered as a part of the special verdict, some of which are in the following language :

1. That the Todd tobacco warehouse being in operation, John W. Tompkins, clerk of the board of aldermen, and *ex*

*officio* of the mayor, went to W. J. Stockton to execute the requisite bond; whereupon, said T., at the instance of said Stockton, prepared the bond, leaving blanks for the names of the sureties and the *days* of the month in the body of the bond.

2. The defendants, *Terry and Bell*, signed said bond on the 30th of *March*, 1860, after said *W. J. Stockton* had signed it.

And upon the issues submitted, the following general and special verdicts were returned by the jury:

1. The word "*March*" was inserted, and the word "*February*" stricken out by *John W. Tompkins*, clerk of the board of aldermen, after the bond was passed by the common council; and that he then called the attention of the board of aldermen to the blanks, and at that time filled them up.

2. That the alteration above was made with the knowledge of the board of aldermen.

3. That the mayor approved the bond.

4. That after the bond had been before the two boards it was presented to the mayor, and by him approved, and ordered to be filed in the clerk's office of the board of aldermen as one of the approved bonds, with others of like character, within forty-eight hours from the evening of the 30th of *March*, 1860; and, finally, they found for the plaintiff $175 50 in damages.

The appellants moved the court below to render a judgment in their favor on the special verdict of the jury, which the court refused to do; but, on the plaintiff's motion, rendered judgment in his favor against appellants for the amount of damages assessed by the jury, to which ruling of the court they excepted, and their motion for a new trial having been overruled, they have brought the case here for revision.

Waiving the consideration of the suffiiciency of the first paragraph of the answer, and conceding, for the *present*, that Tompkins, who was the legal custodian of the bond, may be regarded as the agent of the beneficiaries for whom the bond was taken, the question arises, did Tompkins, by striking out the word "February," and inserting "March," make such an alteration in the instrument as to vitiate it?

The affirmative of this proposition is contended for by the

counsel for appellants, and they have cited several cases to sustain their position.

We propose briefly to consider such of those cases only as seem to have the most direct bearing on the point.

In the case of *Johnson vs. Bank U. S.*, 2 *B. Mon.*, 310, this court certainly stated the principle very broadly when it said : " But we have seen no adjudged case in which it was ever decided that an action was maintainable on a *bill or note* against the drawer, after even an *immaterial* alteration by the payer, without the drawer's authority," &c.

The case of *Martin vs. Miller*, 4 *Term Reports*, 320, is the only case cited by the court to sustain this principle. That was an action upon a bill of exchange, on the trial of which a special verdict was found, to the effect that, after the bill had been accepted, and had passed into the hands of Wilkinson and Cook, the date it bore at the time it was made was changed from the 26th of March, 1788, to the 20th of the same month and year, thereby accelerating the time of payment six days ; and the question before the court was, whether the alteration was such as would avoid the instrument. In the argument of the case by counsel, a distinction was attempted to be taken between the effect of the alteration of a deed and a bill of exchange ; and in the opinion delivered by Lord Kenyon, Chief Justice, he said : " I lay out of my consideration all the cases where the alteration was made by accident; for here it is stated that this alteration was made while the bill was in the possession of Wilkinson and Cook, who were then entitled to the amount of it; and from whom the plaintiffs derive title; *and it was for their advantage* (whether more or less, is immaterial here) to accelerate the day of payment, which in this commercial country is of *the most importance*.

" The cases cited, which were all of deeds, were decisions which applied to, and embraced the simplicity of, the transactions of that time ; for at that time almost all written engagements were by deed only. Therefore those decisions, which were indeed confined to deeds, applied to the then state of affairs ; but they establish this principle, that all written instruments, which are altered or erased, should be thereby avoided."

And after referring to a case in which it was held that the principle extended to other instruments as well as to deeds, and that the law went as far as the policy, he concluded that branch of the subject by saying: " It is on the same reasoning that I have formed my opinion in the present case."

Showing very clearly that the question then before the court was, whether an alteration in a bill of exchange would have the same effect upon it that the alteration in a deed would have. In the opinion it is distinctly stated that "*the alteration was for the advantage of the party holding the bill at the time;*" and that was referred to as an important fact in the case.

The authority cited, therefore, does not sustain the latitudinous doctrine enunciated in *Johnson vs. Bank U. S.*, *supra*.

But we are referred to the case of *Lisle vs. Rogers*, 18 *B. Monroe*, 328. In that case, by the consent of parties, the jury found a special verdict, in substance that the date of the note sued on had been altered by McMurtry from the 4th to the 10th of December, after Rogers indorsed it, without his knowledge or consent, and before it was sold to Lisle; but that the alteration was not known to him when he purchased. Upon that verdict the court gave judgment for the defendant, and the judgment was affirmed by this court. In the opinion in that case it is said: " The doctrine that a material alteration in a note or bill will render it void, seems to be almost universally established; and, indeed, it has been sometimes held that an alteration, however unimportant it may be, will have the same effect;" and in support of this last position *Bank of Commonwealth vs. McChord and Payne*, 4 *Dana*, 191, is cited. It is there said by the court: " But conceding the correct doctrine to be, that an alteration to avoid such an instrument must be *material*—and such seems to be the tendency of modern decisions on the subject—it is perfectly manifest that the alteration in the note sued on was very material so far as the assignor was concerned."

Although the case in 4 *Dana*, *supra*, and *the case of Johnson vs. Bank U. States*, 2 *B. M.*, 310, may not be in express terms overruled by this case, certainly it is strongly intimated, if not expressly decided, that the correct doctrine at this day is, that an alteration to avoid an instrument must be material.

Terry and Bell vs. Hazlewood.

Greenleaf, section 569, says it has been strongly doubted, whether an immaterial alteration in any matter, though made by the obligee himself, will avoid the instrument, provided it be done innocently, and to no injurious person.

And *Chitty on Bills*, *p.* 101, states the doctrine to be, if an alteration be made in any part of a bill which is not *material*, or be made merely for the purpose of correcting a mistake, and in furtherance of the original intention of the parties, such alteration, though made after the bill is complete, will not invalidate it either with regard to the stamp laws or otherwise.   And to the same point may be cited, *Smith vs. Crooker*, *&c.*, 5 *Mass. R.*, 538—opinion. delivered by Parsons, Chief Justice—where it is held that an alteration by erasure or addition made by the obligee, or a stranger, which will avoid a bond, must be in some material part.   (See *Jones vs. Shelbyville Fire, Life, and Marine Ins. Co.*, 1 *Met.*, 58.)

The duties, liabilities, or obligations were not increased or injuriously affected, or changed in any manner, by the alteration in this case, and certainly it was not prejudicial to appellants.

But we do not perceive upon what principle Tompkins should be regarded as the agent of appellee.   The law placed the bond in his custody for the benefit of all parties concerned. Without the execution of such a bond Wm. T. Stockton would not be allowed to become the proprietor of a tobacco warehouse in the city of Louisville, and Tompkins was as much his agent as he was of the planters and sellers of tobacco stored with Stockton.   (*Cook vs. Boyd*, 16 *B. M.*, 556.)

Regarding the alteration as having been made by Tompkins (even if it had been in a material part), who was a stranger to the bond, and without the participation of any party interested, it would not render the bond invalid, or change its legal operation.   (*Lee vs. Alexander, &c.*, 9 *B. M.*, 25, *and authorities cited*.)

The defense set-up in the fourth paragraph of the answer is, in substance, that when appellants signed the bond, the names of W. J. Stockton and T. T. Stockton were affixed thereto, and were also in the body of the bond, the name of T. T.

Stockton having been written there by the clerk of the council and mayor; and that they, knowing T. T. Stockton to be solvent, and believing his signature to the bond to be genuine, signed it. But it turns out that the name of T. T. Stockton is not genuine, and is, in fact, a forgery.

A demurrer was sustained to this paragraph by the court below, which appellants insist was erroneous; and, to sustain that position, cite the case of *A. S. Seely vs. The People, for the use of A. W. Neece, from the supr. court of Ill., April, No.* 1863, *Amer. Law Reg., p.* 344. In that case the same state of facts was held to constitute a good defense to an action on an office bond of a master in chancery, and it is therefore an authority precisely to the point.

But this court decided the same question differently in *Cook vs. Boyd,* 16 *B. M.,* 556.

The facts are not fully stated in the opinion in that case. By a reference to the record, it appears that Boyd sued out an attachment against the estate of W. A. Bruce, and, before the same was levied by the sheriff to whom it was directed, he prepared a bond, and handed it to Bruce to obtain his sureties. Bruce returned the bond to the sheriff signed by himself, and with the name of John H. Hanley as his surety. In this condition the bond was presented to Cook, who also signed it, as the surety of Bruce. Afterwards an action was brought upon the bond against Bruce, Hanley, and Cook. Cook answered, alleging the foregoing facts in substance, and also that, when he signed the bond, he believed the signature of Hanley thereto was genuine; and if he had not believed it, he certainly would not have signed it; but since he signed it, he had learned Hanley's name thereto was a forgery, and that Hanley was relying upon the plea of *non est factum* to defeat the action against him.

Hanley's only defense to the action was *non est factum,* which he sustained by proof, and a judgment was rendered in his favor; but at the same time judgment was rendered against Cook upon the bond, from which he appealed, and the judgment was affirmed by this court.

These are the only authorities precisely in point which we

Terry and Bell vs. Hazlewood.

have met with, and they are in conflict.   It is true that *Sharp vs. The United States*, 4 *Watts*, 22, cited by appellants' counsel, bears some analogy to the case at bar.   In that case it was held that *Sharp*, who signed the bond as John Loughlin's surety, had a right to believe that *William Loughlin*, whose name appeared in the body of the bond, would sign it as co-surety, and his failure to do it furnished *Sharp* a good defense to the action.   This court, however, has uniformly ruled the law differently.   (*Smith vs. Morberly, &c.,* 10 *B. M.,* 266; *Jones, &c., vs. Shelbyville Fire, Life, and Marine Ins. Co.,* 1 *Met.,* 58.)

Regarding the principle, then, as settled by this court, it is deemed best to adhere to the decision, at least until some weighty and sufficient reasons shall be presented for a departure therefrom; which we do not think has been done in this case.

The demurrer to the fourth paragraph of the answer was therefore properly sustained, and, as the facts proposed to be proved by *Stealy*, the absent witness, related to the defense set up in that paragraph, the court below did not err in refusing a continuance on account of his absence.

Whether the bond was approved by the general council and mayor of the city of Louisville, in strict conformity to the *act supra*, we need not inquire.   It is in substance such a bond as the statute requires to be executed by the proprietors of tobacco warehouses in the city of Louisville; it was voluntarily executed by appellants, and is obligatory as a common law bond. (*Lane vs. Kasey,* 1 *Met.,* 410; *Cook vs. Boyd,* 16 *B. M.,* 556.)

Judgment affirmed.