## O'Geary v. Lorch.

(Decided December 7, 1916.)

### Appeal from Fayette Circuit Court.

1. **Principal and Surety—Release.—**A surety in a supersedeas bond is not released because of the release of a co-surety who had no power or legal capacity to sign the bond.
2. **Principal and Surety—Release—Supersedeas Bond.—**The fact that an execution was issued on the judgment after it had been affirmed on appeal and levied on property of the principal execution debtor will not release the surety in the supersedeas bond when it is not shown that the levy of the execution had in any manner impaired his rights as against his principal.

RIVES & SHANNON for appellant.

WALLACE MUIR, CHESTER B. ADAMS and HAYS & HAYS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellee, F. E. Lorch, recovered judgment in the Clark circuit court against J. P. Lacy for the sum of $859.42, with costs, from which judgment Lacy prosecuted an appeal to this court. There was a supersedeas bond executed before the clerk in the usual form, and in the

body of which appeared as sureties "Mutual Loan & Trust Company, by L. P. Lacy, mgr.," and the name of appellant, J. M. O'Geary. The name of the Mutual Loan & Trust Company was subscribed at the bottom of the bond as one of the obligors therein by Lacy as manager in the same manner in which its name appears in the body of the bond, and, following its name, is that of appellant, O'Geary, Lacy, of course, having signed the bond as principal; and with it executed in this manner, it was approved by the clerk of the court. On the appeal the judgment was affirmed, and this is a suit filed by Lorch against the sureties in the bond to recover the judgment, interest, cost and damages. Each defendant filed a demurrer to the petition, and that of the Mutual Loan & Trust Company was sustained and the petition dismissed as to it, but the demurrer of O'Geary was overruled and he filed an answer consisting of three paragraphs, the first of which was a denial of some of the material allegations in the petition, but he admitted having signed the bond as a surety thereon. In the second paragraph he pleaded the release of his co-surety, Mutual Loan & Trust Company, insisting that this operated as a release of himself, and that he was not liable thereon. In the third paragraph he sought to be relieved because, as he alleged, the plaintiff, after the return of the case, had procured execution against Lacy and it had been levied on some property claimed to have belonged to defendant in the execution, and it is insisted that it was the duty of the appellant to have followed the levy with the enforcement of the lien created by it, and, having failed to do so, the appellant was discharged.

A demurrer was filed to the second and third paragraphs of the answer and sustained by the court, to which exceptions were taken. The first paragraph of the answer was then withdrawn and judgment rendered for the amount sued for, to reverse which this appeal is prosecuted. It is not shown anywhere in the record the reasons which prompted the court to sustain the demurrer filed to the petition by the Mutual Loan & Trust Company, but it is intimated in briefs of counsel that it was not authorized by its charter to become surety for others, and that the attempt to do so was *ultra vires* and void. Conceding this to be a fact, the action of the court in sustaining the demurrer raises the question of practice as to whether its competency to incur the obli-

gations of a surety should affirmatively appear in the petition filed against it, or should this fact be manifested by answer. The court evidently concluded that it was the duty of the plaintiff in his petition to affirmatively show the capacity or right of the corporation surety to become such, as there is nothing in the petition indicating the absence of such legal capacity. We shall not enter into a discussion of the correctness of the court's ruling in this particular, as the question is not presented by any appeal from the judgment releasing the corporation surety, and under the view which we entertain, we are clearly convinced that the court correctly held that the facts set up in the two paragraphs of the answer of O'Geary demurred to did not constitute a defense.

Considering the matters pertaining to the second paragraph, it is urged upon us by counsel for appellant that the doctrine announced in the two cases of English v. Dycus, 9 Ky. L. R. 188, and Wilson, Receiver, etc. v. Linville, etc., 96 Ky. 50, and in cases preceding and following them apply to the facts of this case, and that as appellant's co-surety was by the judgment of the court released from the bond sued on, this *ipso facto* operated as a release of himself. The cases referred to, as well as others, both preceding and succeeding, hold the rule in this state to be that the officer whose duty it is to take, approve and accept official bonds must do so in such a way as to obligate each surety whose name appears to the bond, and if he should fail to do so, whereby one of the sureties who appears to have signed the bond is released, this will operate as a release of all of the sureties. Our investigations, however, show that the cause for the release of the particular surety resulting in the discharge of his co-sureties in the cases heretofore before this court was not because of the incapacity of the particular surety released, but because of the failure of the officer taking the bond to comply with some formality in its execution, and which compliance was essential to bind the particular surety. The co-sureties might well rely upon the officer taking the bond to see to it that all legal formalities were complied with so as to bind all the sureties insofar as the legality of the execution of the bond is concerned. It might, however, be different as to the legal capacity of the released surety to enter into such an obligation. The officer taking the bond might well be presumed to do his duty with reference to the manner

in which it should be done, but it is a different proposition as to whether he should be compelled to know whether an offered surety is an infant, married woman or an insane person; or, if a corporation, whether its articles permitted it to incur such obligations. But, however this may be, we are convinced that the doctrine of those cases should not be extended beyond the facts appertaining to them. As stated, the obligations considered by those cases are official bonds; the only named obligee in them is the Commonwealth of Kentucky, and under the law any member of the public who may be aggrieved by any action of the officer executing the bond may bring suit thereon; but even this would have to be done in the name of the Commonwealth, for his use and benefit. We are clearly of the opinion that the rule announced by those cases should not be extended so as to include bonds of the nature and character of supersedeas bonds. The latter class of obligations are either payable to a designated obligee, or to a particular class of named obligees, and there are numerous cases from this court to the effect that the releasing of a surety on such obligations will not affect the liability of the co-sureties, unless the release is brought about by some act of the obligee himself, and such is the rule applicable to private obligations. Among the cases from this court are Smith v. Morberly, etc., 10 B. M. 266; Cook v. Boyd, 16 B. M. 556; Jones v. Shelbyville Fire, Life & Marine Insurance Company, 1 Met. 58; Terry, etc. v. Hazlewood, 1 Duv. 104; Hall v. Smith, 14 Bush 611; Wheeler v. Bank, 107 Ky. 655; Wills v. Evans, 18 Ky. Law Rep. 1067, and Warren, et al. v. Louisville Leaf Tobacco Exchange, 55 S. W. (Ky.) 912. As illustrating the rule announced by these cases we will briefly consider only two of them, Terry, etc. v. Hazlewood, and Wills v. Evans.

In the Terry case an act of the Legislature passed at its 1859-60 session required the proprietors of tobacco warehouses in the city of Louisville to enter into a bond to be approved by the mayor and general council of the city, payable to the Commonwealth, and in the sum of $10,000.00, conditioned that the warehouseman would pay over to the owner of the tobacco which he might sell its proceeds, and providing that if he should fail to do so that the injured party might maintain suit on the bond. The bond required of the warehousemen had been taken in strict conformity to the requirements of

the statute, but it turned out that the name of one of the sureties, T. T. Stockton, had not been legally subscribed to the bond so as to bind him as surety. His co-sureties relied on his release as a defense in a suit brought against the warehouseman and his sureties in the bond, but this court declined to give the effect of the release of Stockton insisted upon by the defendants, and held them liable, notwithstanding the release of Stockton, and, in doing so, said:

"Regarding the principle, then, as settled by this court, it is deemed best to adhere to the decision, at least until some weighty and sufficient reasons shall be presented for a departure therefrom."

In the case of Wills v. Evans the court had under consideration the effect of the release of a surety in a guardian's bond, who, at the time he signed it, was a minor. His co-sureties, when sued upon the bond, relied upon the fact of his release as a defense, but the court declined to give it that effect, and, in doing so, said:

"It does not follow, however, as seems to have been held by the trial court, that the other sureties are thereby released. In some cases, notably in taking sheriff's bonds, the county judge has been held to a strict adherence to the methods provided by law for the extension of the obligation by the sureties, and on his failure to have the bond signed in such way as to bind all, the other sureties have been discharged.

This rule has not been adopted in other states, and will not be extended here to the disadvantage of infants, for whose protection such bonds are executed. Each surety, without any fraud or misrepresentation practiced on him by the officer taking the bond or by the ward, signed the bond in question, and undertook that the principal should faithfully perform his duties."

In the case now under consideration, the bond is made payable to the plaintiff in the judgment, the appellee, Lorch. We are unable to see wherein the clerk in taking such bonds is acting any more on behalf of the plaintiff in the judgment than he does on behalf of the defendant who is seeking relief through the execution of the bond, and if the clerk should make a mistake in accepting a surety who is incompetent, we are not prepared to say that the consequences of such a mistake should fall on the plaintiff whose judgment is sought to

be questioned by the proposed appeal, rather than on the defendant and those who are endeavoring to assist him to question the correctness of the judgment by appealing therefrom. Indeed there is good authority for the proposition that such mistake on the part of the clerk in the acceptance of this particular character of bond, unless the obligee therein was a party to it, is not a defense to a suit on the bond. It was so held by the superior court in this state in the two cases of Gaines v. Griffith, 13 Ky. Law Rep. 263, and Watson v. Johnson, 13 Ky. Law Rep. 336. In 4 *Corpus Juris* 1256, the rule is stated to be:

"Mistake or fraud in the execution of a bond, whereby the obligors execute a bond different from the one intended is available as a defense only in case the obligee was a party to the fraud or mistake."

If the clerk in the instant case mistakenly accepted the name of Mutual Loan & Trust Company when at the time it was without legal capacity as adjudged to become surety thereon, the obligee on the bond (appellee) not being a party to the mistake, cannot be affected thereby, and the other sureties cannot be released because of such mistake. We think, in the character of obligations of the one now under consideration, the policy of the law is best served by requiring those who become obligors therein as sureties to themselves exercise at least a reasonable degree of diligence to discover not only the character of obligation which they sign, but also whether others who sign it with them have the capacity to do so, and, if they possess such capacity, whether they have in reality become obligated thereon.

In regard to the matters relied on in the third paragraph of the answer, there is nothing to show the character of property that was levied upon, or whether it was sufficient to have realized any portion of the judgment, and, if so, how much, nor is it shown that such levy had in any manner been released, or that by any acts of the appellee any of the property of the principal in the bond had been placed beyond the reach of any of his creditors, or his sureties on his appeal bond. There is no fact shown which would, under any rule of law known to us, relieve, *pro tanto* or otherwise, the appellant from the full amount of the bond.

It results, therefore, that the judgment appealed from is correct, and it is affirmed.