KINDLE and Others *v.* THE STATE, on the Relation, &c.

Debt on a county treasurer's bond. Breaches assigned in the declaration, 1. That the treasurer did not make settlement with the county auditor, &c.; 2. That he did not pay over the state revenue, &c. Pleas, 1. Not guilty ; 2. Performance, in general terms. *Held*, that the pleas were bad.

If after a county treasurer has given bond with sureties for the discharge of his duties, the law respecting county treasurers be changed, by extending the time for their making settlements and payments, &c., and the said treasurer fail to discharge his duties under the new law, he and his sureties will be liable on their bond.

ERROR to the *Madison* Circuit Court.

SULLIVAN, J.—Debt on a county treasurer's bond. The declaration sets out, that to the bond sued on there was a condition annexed, whereby, after reciting that *James A. Kindle* had been elected to the office of treasurer of *Madison* county, it was stipulated that if the said *Kindle* should and would pay over, according to law, all moneys that might come into his hands for state, county, road, or other purposes, during his continuance in office, then said bond should be void, otherwise to remain in full force, &c. The first breach

assigned is, that although a duplicate was, on, &c., made out by the auditor of *Madison* county, and delivered to said *Kindle*, and although *Kindle*, as treasurer of said county, did then and there take upon himself the collection of the taxes assessed in said county for the year 1843 according to said duplicate, &c.; yet *Kindle*, as treasurer of said county, did not on the second *Monday* of *January*, 1844, he still being treasurer, make settlement with the auditor of said county, and make return of delinquencies, &c., according to law, but wholly neglected so to do.   The second breach is, that *Kindle*, as such treasurer, collected the sum of 4,000 dollars, as part of the taxes for the year 1843 for state purposes; yet he did not on the fourth *Monday* of *January*, 1844, nor at any other time, pay the same or any part thereof to the treasurer of state, as by law he was required to do, &c.   *Kindle* filed two pleas; 1st, Not guilty of the several breaches assigned; 2dly, Performance of the conditions of the bond.   One of the defendants, *Adam Pence*, filed a general demurrer to the declaration, and three of the defendants, *Young*, *Nelson*, and *Vineyard*, filed special demurrers to the declaration. The remaining defendants, *Pugh*, *M'Allister*, and *Joseph Pence*, craved *oyer*, &c., and pleaded 1st, *Non est factum;* 2dly, Not guilty of the breaches assigned; 3dly, Performance, &c.   The plaintiff filed a general demurrer to *Kindle's* pleas; a replication to the 1st plea of *Pugh*, *M'Allister*, and *Joseph Pence*, and demurrers to their 2d and 3d pleas.   The demurrers of *Young*, *Nelson*, *Vineyard*, and *Adam Pence*, to the declaration were overruled; and the demurrers of the plaintiff to the pleas of *Kindle*, and to the 2d and 3d pleas of *Pugh*, *M'Allister*, and *Joseph Pence*, were sustained.   *Kindle*, *Adam Pence*, *Young*, *Nelson*, and *Vineyard*, who failed to plead further, were defaulted, and a writ of inquiry as to damages against them was awarded.   The issue on the plea of *non est factum,* and the inquest of damages against those in default, were, by consent of parties, submitted to the Court for trial and assessment, and final judgment for the plaintiff was awarded against all the defendants.

The demurrers to the pleas of *Kindle*, and to the 2d and 3d pleas of *Pugh*, *M'Allister*, and *Joseph Pence*, were correctly sustained.   The plea of not guilty to the breaches here

assigned, forms no certain issue. A plea that tenders no issue is substantially bad. The plea of performance, pleaded as it was in general terms, was also bad as being no response to the breach. The plaintiff having set out the condition of the bond, and assigned breaches in his declaration, specified the particular delinquencies for which the suit was brought. The plea should have answered the breaches assigned, that an issue might have been formed without the plaintiff again spreading upon the record the particular breach complained of. Steph. on Pl. 336, 7.

The important question in this cause — arising upon the demurrers to the declaration — remains to be considered. The bond was entered into on the 12th of *August*, 1841, at which time the law required the county treasurer to make settlement, &c., with the county auditor on the second *Monday* in *January*, annually, and to pay over to the treasurer of state the money collected for state purposes, on or before the fourth *Monday* of *January* in each year, &c. Acts of 1841, p. 31. By the revenue act of 1842, the law was so changed that the time of settlement with the county auditors, was thereafter to be the third *Monday* of *February*, and the time of paying the revenue for state purposes to the treasurer of state, the first *Monday* in *March*, annually. The act of 1843, R. S. p. 220, sections 68 and 69, restored the second *Monday* of *January* as the time of settlement with the county auditor, and the fourth *Monday* of *January* as the time of paying over to the state treasurer the moneys due for state revenue; and this latter act was, by the 15th section of the act entitled "An act in relation to the printing and distribution of the Revised Statutes," approved *February* 13, 1843, declared to be in force from and after the 1st day of *March* next following. Laws of 1843, p. 45. It is contended that the law in force at the time the bond sued on was executed, was a part of the contract between the obligors and the state, and that the act of 1842, by which the times at which the county treasurers were to settle with the county auditors, and to make payment to the treasurer of state, were changed, was in the nature of a contract between the payee and the principal obligor in a bond to extend the time of per-

formance, without the consent of the sureties, and that there-
fore the latter are discharged.

County treasurers are elected for a term of three years,
and before entering into office, they are required to give bond
for the faithful performance of their duties "according to
law." The counsel for the plaintiffs in error contend, that
the law in force at the time of the contract, is the law which
is to govern the treasurer in the discharge of his duties
through his whole term; on the other hand, the defendant's
counsel insist that the legislature may, from time to time,
make such changes in the revenue laws as the public good
requires; and that the treasurers, according to the terms of
their bonds, are bound to observe and obey them. We think
the defendant's counsel have taken the right view of the ques-
tion. The contract refers to laws that may be passed during
the term for which the treasurer holds, as well as to the law
in force at the time it was entered into. It is not necessary
now to inquire, whether laws may not be passed by a legisla-
ture for the relief of the principal obligor in a bond, the effect
of which would be to discharge the sureties. This case does
not call for the consideration of that question. The law
relied upon in this case, as effecting the discharge of the sure-
ties, is a general law, having respect only to the times of set-
tlement with the authorized agents of the government. As
to such a matter, we think the legislature intended, and the
bond contemplates, that the law may be modified as expe-
rience shall show the public good demands. But if we admit
that the law in force at the time of the execution of the
bond, is the law contemplated by the contract, according to
which the treasurer's duties were to be discharged, we are
still of opinion that the act of 1842 does not destroy the con-
tract. That act we consider as directory only to the agents
of the government, and does not affect the undertaking of the
sureties. This view of the statute is strengthened by what
the Supreme Court of the *United States* says in the cases of
*The United States* v. *Kirkpatrick et al.* 9 Wheat. 720, 736,
and *The United States* v. *Vanzandt*, 11 Wheat. 184, 190.
Those cases are not, in all respects, similar to the case under
consideration, yet the question arose in each of them, whe-
ther a failure on the part of the government to require a set-

Nov. Term,
1845.

tlement with a holder of public moneys, at the times desig-
nated by the law in force when the bond was entered into,
did not discharge the sureties from all liability for defalcations
made after the designated periods.   In both cases, the Court
held that those provisions of the law, relative to the periods
of settlement, were created by the government for its own
protection, and to regulate the conduct of its own officers.
They are merely directory, says the Court, to such officers,
and constitute no part of the contract with the sureties.

The defendant in error insists, also, on the act of *February*
13, 1843, above cited, by which the times of settlement and
payment were restored to the periods as they were fixed by
law at the date of the contract, as conclusive against the
plaintiffs in error.   We do not think it necessary, however,
to place this case on that ground, as the defendants are clear-
ly liable irrespective of that statute.

*Per Curiam.*—The judgment is affirmed with costs.

*H.* and *H. Brown,* and *W. W. Wick,* for the plaintiffs.

*H. O'Neal, W. Quarles,* and *J. H. Bradley,* for the de-
fendant.