CHIEF JUSTICE PRYOR
delivered the opinion op the court.
This action was originally instituted in the Bullitt Circuit Court, and by change of venue was heard in the Jefferson Court of Common Pleas. It is based on the following writing : “ Whereas, B. S. Hall has this day been appointed by the Bullitt County Court of Kentucky deputy sheriff of said county: Now we, B. S. Hall, principal, and Lewis Hall, Minor Hall, W. L. Hall, James Hall, S. M. Hobbs, C. A. Collins, his sureties, do hereby undertake and covenant to James F. Smith, sheriff of Bullitt County, Kentucky, that said B. S. Hall, deputy sheriff aforésaid, shall well and truly perform the duties of said deputy sheriff, and pay over to the persons so entitled all sums of money or other property that may come to his hands, and shall account for and pay over to said sheriff, Smith, all taxes which he, said Hall, may collect. We expressly undertake that said B. S. Hall, deputy sheriff as aforesaid, shall save said Smith from all loss and damages which he may sustain by reason of the acts of said B. S. Hall, deputy sheriff as aforesaid. September 18, 1871.”
(Signed,) Hall.
Lewis Hall.
Minos Hall.
S. M. Hobbs.
C. A. Collins.
G. Wolfe.
William W. Hall.
Lewis Hall, whose name appears as a surety on the bond, was the father of the principal obligor, B. S. Hall, and died prior to the institution of this action. His administrator being sued, pleaded non est factum, and before the hearing, the action as to him was dismissed.
James Hall and William L. Hall, whose names appear in *608 the body of the bond as sureties, never signed or executed the paper, and the names of G. Wolfe and William W. Hall seem to have been substituted.
The appellant S. M. Hobbs filed in the court below a special plea of non est faotvm, in which it is alleged, in substance, that the defendant. Hobbs signed the bond upon the express condition and agreement'that all of the parties named as' sureties on the bond were to sign it before delivery, of which fact Smith, the obligee, had notice. . That he agreed to become bound as a joint surety in the bond with the parties therein named, and on no other condition; and the same was not binding until it had been fully executed.
It was not attempted upon the hearing to show that Hobbs ever waived his right to have the bond executed by James Hall and William L. Hall, or to assume the responsibility in conjunction with other parties, whose names seem to have been substituted as sureties. The'bond was in the hands of the principal obligor, and the names of James Hall and William L. Hall- inserted in the body of that instrument at the time Hobbs affixed his signature, and when signed was delivered, as it now appears, to the appellee (the sheriff), and by him accepted as an indemnity against any loss he might sustain by reason of the acts of the principal obligor, B. S. Hall, who had qualified as his deputy. This testimony conduces to establish the fact that Hobbs signed the paper on the condition that the parties whose names are inserted in the bond should become jointly bound with him as sureties, and the instrument, when thus signed, was delivered to the principal obligor, in order that he might obtain their signatures, and the latter, instead of obtaining their signatures, induced Wolfe and Wm. W. Hall to sign the paper, and in that condition it was delivered to and accepted by the appellee.
An instruction was offered by counsel for Hobbs to the effect that if he signed the bond as an escrow, or if he signed *609 the bond and delivered it to B. S. Hall, the principal obligor, on the condition that he was to procure the signatures of the parties named in the instrument as his joint sureties, and that B. S. Hall failed tó do so, it was an incomplete undertaking on the part of Hobbs, and not binding upon him, although delivered to the appellee; that the writing itself was notice to the appellee of the terms on which Hobbs had agreed to become liable. This instruction was refused, of which the appellant Hobbs complains. There was a special finding by the jury, at the instance of this appellant, sustaining his defense, and also a finding that appellee Smith had no notice or knowledge of any of the conditions upon which appellant signed the writing at or before the time of its delivery to him by the principal obligor. The court below told the jury in substance that in the absence of such notice the finding must be for the appellee.
That the writing was delivered by Hobbs to the appellee as an escrow constituted no defense was settled by this court in the case of Millet v. Parker, reported in 2 Metcalfe, 608. In that case the bond was: “We undertake and bind ourselves unto W. L. Parker that W. B. Vansant will perform his part of the contract of dissolution of partnership between the said Yansant and Parker, and that he will- save him harmless therein. April 1, 1876. “W. B. Yansant.
“ F. Millet.”
Millet, the surety, pleaded, and the testimony established the fact, that the obligation was handed to the obligor Yansant by the surety, with the express agreement and condition that it' was to be taken by him to one Beverly to be executed by him as a surety also, and was not to be a binding obligation until that was done. This court said, on an appeal by the surety Millet, the writing having been delivered without Beverly’s signature, that a writing delivered to or held by one of the obligors imposed no obligation on any of the *610 parties signing it so long as it remained in the obligor’s possession, while an escrow could not be revoked by the party making it, and the one in whose favor it is made is entitled to the obligations whenever he complies with the conditions upon which it is to be delivered. The obligors retaining the possession of the obligation may destroy or cancel it at any time, as it has never become obligatory for- the want of delivery and acceptance by the party for whose benefit it was made. It is also said in that case, “ The surety, by putting his name to a paper, and leaving it in the possession of his'principal, enables him to make use of it, and impose on a person who is ignorant of the secret agreement between the obligors.” He trusts the principal, “ and does not deliver it as an escrow.”
This principle was recognized by this court in the cases of the Bank of the Commonwealth v. Curry, 2 Dana; Smith v. Moberly, 10 B. M.; Whitaker v. Crutcher, 5 Bush; Murphy v. Hubble, 2 Duv.; and in many others that might be cited.
It is maintained by counsel for the appellant that the doctrine announced in the cases cited has no application to the case under consideration, because the appellee had notice from the bond itself, that it was an incomplete instrument, and appellant’s liability depended upon its execution by the parties named in the body of the bond as his co-sureties. It is well settled that a conditional signing by a surety can not affect the rights of the obligee unless he has notice of the existence of such an agreement between the principal and his surety before he accepts the obligation, and the negligent obligee or surety must be made to suffer, and not the innocent payee. The principal in an obligation, however, can not exercise unlimited power to change or alter the stipulations of a contract, because he is intrusted with the duty or is given the right by the surety to deliver it to the obligee. Where the contract is complete when signed by the surety, the authority given the principal obligor to deliver, does not imply any *611 authority on his part to change its terms. It is no longer the obligation of the surety, if a material alteration is made without his consent, and in cases where the obligation or contracis perfected, and the surety attempts to rely on a defense existing by reason of some agreement, between himself and the principal obligor, made at the time of the signing, it is well settled that it can not affect the rights of the obligee, or prevent his recovery, unless he had notice of the agreement at or before his acceptance of the obligation, or was in the possession of such facts and circumstances with reference to the rights of the surety as would place an ordinarily prudent man on inquiry.
The same rule also applies where the paper is blank as to dates, amounts, stipulations, etc., and is intrusted with the obligor to fill up the blank, or to insert the terms and conditions of the agreement. In all such cases the doctrine, that he who trusts must lose, prevails, and as between the, surety and an innocent holder the surety must bear the loss.
Counsel for the appellee rely on the cases of Terry & Bell v. Hazlewood, 1 Duvall, 104, and Jones v. The Shelbyville F. L. & M. Insurance Co., 1 Metcalfe, 58, as sustaining the judgment of the court below. In the first-named case Terry & Bell were the joint sureties, as they supposed, with T. T. Stockton on a bond to the Commonwealth. It was made to appear that the signature of T. T. Stockton was a forgery, and Terry & Bell resisted a recovery against them on the ground that they signed the obligation believing the signature of their co-surety was genuine, and agreed to become liable, jointly, with him, and in no other manner. The court held the sureties liable on the ground that the Commonwealth was in no wise instrumental in obtaining the surety, and the writing having been delivered as a complete instrument, without notice of any wrong, it was the negligence or fault of the surety in trusting his principal, and he must therefore suffer.
*612 The obligee practiced no fraud on the sureties, and they had been deceived by those they trusted; in fact, the signature of Terry & Bell to the paper was evidence to the obligee, when the paper was delivered, that it was the genuine signature of all the parties to it. The obligee had the right to presume that the sureties would not assume the liability without knowing who had or was to become liable with them; and as one of two innocent parties must suffer, the one whose negligence contributed to the loss must bear it.
There are cases, however, taking a different view of this question, and upon the same facts indicate that the surety would be released. (See Seely v. The People, 27 Illinois.)
The obligation delivered by Stockton was perfect, and the obligee was without notice of the fraud, or the existence of any fact that would place an ordinarily prudent man on inquiry; and for this reason we do not regard the case as analogous to the one before us.
The case of Jones v. The Shelbyville F. L. & M. Insurance Company is the strongest 'case in support of the views presented by counsel for the appellee. In that ease the names of Parish and Ratcliff were inserted as the sureties of Staples in the body of the note. Ratcliff signed the paper as surety, and Parish failing to do so, the signature of Jones was procured as a co-surety without Ratcliff’s consent, and the name of Parish, after or at the time the note was delivered to the agent of the obligee, was erased from the body of the note, and that of Jones inserted. Whether the name was erased in the presence of the agent of the company, does not appear; but it is expressly held that if the appellees had notice of the agreement with Ratcliff it released him from liability. The reasoning of the court in that case is in harmony with all the previous decisions of this court on the questions involved; and if the principal obligor erased the names of some of the sureties inserted in the note when in an incomplete state, *613 without the knowledge of the obligee, the latter had the right to presume that he had the authority to do so, or that it had been done by the consent of the parties whose names were then affixed to the paper. In the case under consideration the names of those who were to become the co-sureties of the appellant Hobbs were inserted in the body of the bond, and the obligation delivered and accepted by the obligee in that condition. The principal obligor had qualified or was about to qualify as the deputy of the appellee, who was then the sheriff of the county of Bullitt. The deputy was required to indemnify his principal, and the appellant agreed to become jointly bound with the parties named in the bond as the surety of the deputy. He knew their relation to the .deputy, the ability of each one of the parties to assume his part of the loss in the event any was sustained, and was willing to share the responsibility with them.
He had signed an obligation by which he had undertaken, in conjunction with the parties named in the bond, to become liable to the appellee. He had the right to prescribe the terms upon which his liability was to depend, and, when not acting so as to mislead or deceive others, is entitled to the letter and spirit of his undertaking. He might have been willing to bind himself jointly with the parties whose names were on the bond, and unwilling to waive this right in order that other names might be substituted. He had the right to believe that the parties named as sureties would become bound with him, the instrument when signed by him being complete except as to their signatures. If, when the deputy made default, they had signed the bond, the liability of appellant would have been-lessened,'or he could have required them to share the loss. It is not pretended that appellee must be denied a recovery in .the absence of notice as to the conditions upon which appellant was to become liable. This notice may be actual, or such as would place an ordinarily prudent man on inquiry.
*614 This rule has its application to commercial paper, and while mere evidence of the existence of facts that might lead to an inquiry by which the fraud could be discovered is not sufficient to invalidate a negotiable instrument, the rule has never been applied so strictly to non-negotiable instruments; but as to either, where the facts would satisfy one of ordinary prudence and judgment of the infirmity of the paper, no recovery can be had. (Goodman v. Simonds, 20 Howard; Woolfolk v. Bank of America, 10 Bush; Blakey v. Johnson, 13 Bush.)
In this case the bond was delivered and accepted by the appellee in the same condition it was in when signed by the appellant. The face of the instrument was plain as to the terms upon which the appellant had agreed to become liable. The bond purported to be the bond of those who never executed it, and gave every evidence to the holder that it was an incomplete instrument. He saw the names of the parties signed to the instrument, and knew the character of the undertaking, and, as an ordinarily prudent man, should have made inquiry to know why it was the names of these parties were on the bond as sureties and not signed so as to make it their obligation.
The names had not been erased, and no blank left on the paper, or any other evidence on its face indicating that they were not to become bound. If the principal had stated that the appellant had waived his right to have them sign the paper, it would have been in direct conflict with the writing itself that was at the time delivered and accepted by him. The extent of his liabity was plain, unmistakable, and was notice to the obligee of the condition upon which the appellant agreed to become bound.
In the case of Fletcher v. Austin, 11 Vermont, it was held “ where a bond contains, in the obligatory part, the names of several persons as sureties, if a part sign with the understanding and on the condition that it is not to be de *615 livered to the obligee until signed by the others, it is not effectual as to those who do sign until complied with. The obligee must inquire whether those -Who have signed consent to its being.delivered without the signatures of others.” In the case of Sharp v. The United States, 4 Watts, it is said, “ His (the surety’s) signature is conditional, and unless it be shown that the condition, viz. the execution of the bond by William Laughlin, whose name appears in the body of it, has been dispensed with by him, he has a good defense to the suit.” (Cutter v. Roberts, 4 Nebraska; Duncan v. United States, 7 Peters.)
The conditions upon which appellant signed the bond having been pleaded and established, the bond on its face was notice to the appellee, and there being no proof of a waiver of his contract, in order that other names might be substituted in lieu of those who failed to sign, a judgment should have been rendered for this appellant on the special finding. The judgment below, as to Hobbs, is therefore reversed, and cause remanded with directions to render a judgment in his favor.
As to the other appellants, their defense is based on the general plea of non est factum, with an additional defense, controverting the fact of the collection of the money by their principal, and their liability therefor. Under the general plea of non est factum the question as to the conditional signing and delivery of the writing can not be considered, and the remaining inquiry 'as to these appellants arises on the instructions. The petition we regard as presenting a cause of action, and the breach of the covenant alleged is the collection of the money by the principal, and his failure to pay it to the appellee. The breach is that the deputy failed to account for and pay over to his principal (the plaintiff) moneys collected by him. The instructions given at the instance of the appellee authorize a finding against appellants, not only for the moneys collected by the principal, but. for moneys that he might have *616 collected on claims in his hands. This was erroneous, as the only breach assigned was his failure to account for and pay over the money collected by him.
The fact that the appellee was permitted to look to a paper in his possession to refresh his memory as to the existence of certain facts did not prejudice the appellant. He did not derive his knowledge from the writing, but merely resorted to it to enable him to state more correctly the dates and amounts of claims about which he was testifying. There are other errors complained of that will not be considered, as they do not, if conceded to exist, affect the substantial rights of the parties.
Judgment reversed, and cause remanded, with directions to award the appellants, Minor Hall and Wolfe’s administrator, a new trial, and for further proceedings consistent with this opinion.