V. W. HAGLER ET AL. V. STATE OF NEBRASKA.

[FILED JANUARY 6, 1891.]

1. **Official Bonds:** ALTERATION: SURETIES. Where an official bond is altered after the same has been signed, but before its delivery and approval, by the erasure of the name of one of the sureties thereon, and the alteration is plainly noticeable, all the sureties are released who had no knowledge of or did not consent to the alteration or ratify it.

2. ———: ———: ———: RATIFICATION. In such a case, if the sureties, after having received knowledge of the alteration, accept indemnity from the principal obligor, they thereby adopt and ratify the bond as their own, and are liable according to the conditions therein written.

ERROR to the district court for Saline county. Tried below before MORRIS, J.

*Abbott & Abbott,* for plaintiffs in error, cited : *Perry v. Patterson,* 5 Humph. [Tenn.], 133; *State Bank v. Evans,* 3 Green Law [N. J.], 155 [28 Am. Dec., 400, and note at 408]; *People v. Bostwick,* 43 Barb. [N. Y.], 1 [32 N. Y. 445]; *Smith v. United States,* 2 Wall. [U. S.], 219; *Cutler v. Roberts,* 7 Neb., 5; *Letcher v. Bates,* 22 Am. Dec., 92; *Woodworth v. Bank,* 10 Id., 239; Murfree, Official Bonds, sec. 760; *Caffrey v. Dudgeon,* 10 Am. Rep., 134; *Draper v. Wood,* 17 Id., 92; *Nash v. Fugate,* 18 Id., 640; *Sharp v. U. S.,* 28 Am. Dec., 679, notes; *Hessell v. Johnson,* 6 Am. St. Rep., 334 [63 Mich., 623]; *Taylor Co. v. King,* 5 Am. St. Rep., 666.

*Geo. H. Hastings, contra,* cited: *Cutler v. Roberts,* 7 Neb., 4; *McCormick v. Bay City,* 23 Mich. 457; *Carroll v. Ruggles,* 69 Ia., 275; *Taylor Co. v. King,* 34 N. W. Rep., 774; *State v. Peck,* 53 Me., 284; *Chicago v. Gage,* 99 Ill., 593; *Drury v. Foster,* 2 Wall. [U. S.], 24; *Kopplekom v. Huffman,* 12 Neb., 98; *Lee County v. Welsing,* 30 N. W. Rep., 481; *Wiley v. Moor,* 17 Serg. & R. 438; *Wright v. Harris,* 31 Ia., 272.

NORVAL, J.

This suit was brought in the court below against Wm. R. Toole, as a former town treasurer of Dorchester township, Saline county, and V. W. Hagler, Andrew Moffitt, W. J. Jennings, N. C. Rierson, Alfred Barslow, and Paul Bankson, as sureties on his official bond, to recover the sum of $2,064.48, with interest thereon. Toole failing to answer, his default was entered.

The defendant Moffitt filed an answer admitting that he signed the bond, and alleging that before the same was presented for approval, his name, at his request, was erased therefrom.

Hagler in his answer alleges that he refused to sign the

bond unless Moffitt and the other defendants would also sign the same as sureties; that Moffitt promised to and did sign the bond, and the other defendants afterwards signed the same; that before its approval the name of Moffitt was purposely erased, without the knowledge and consent of Hagler, and that he had no knowledge of such withdrawal until after the defalcation of Toole.

The defendants Jennings, Bankson, Barslow, and Rierson join in an answer, in which they set up that Moffitt and Hagler had signed the bond when they signed the same, and allege that Moffitt's name was afterwards erased without their knowledge and consent, but before the bond was approved.

A jury was waived and the case was tried to the court, who found the issues against all of the defendants, and rendered a judgment in favor of the plaintiff below for $2,530.50. All of the answering defendants joined in a motion for a new trial, which was overruled, and the sureties bring the case here on error.

The record discloses that the defendants Hagler and Moffitt signed the bonds by mutual agreement and at about the same instant of time, Hagler signing first, followed by Moffitt. It was shortly afterwards presented to and was signed by the other sureties. After all the defendants signed the bond, and before it was presented for approval, Moffitt's name was, at his request, erased from the instrument by drawing a pencil line through the name, unbeknown to the other sureties. In this condition the principal in the bond filed it, and it was afterwards approved. Toole was robbed of the money which he had collected as taxes. No question is made as to the amount of his defalcation. It further appears from the testimony that soon after Toole was robbed, for the purpose of indemnifying the sureties against loss, he turned over to them his real and personal property of the value of several hundred dollars. The real estate consisted of two lots

in the village of Dorchester, which were held at the time
by Toole under a contract of purchase.  Sometime after-
wards the sureties sold the personalty, and with the pro-
ceeds arising therefrom paid the unpaid purchase price on
the lots and took a deed therefor in the names of all the
sureties, including Moffitt.

Until the bond in question was delivered to the proper
officer and approved, it was not binding upon any of the
obligors.    Prior to its approval, any signer could lawfully
have his name erased from the instrument, and such with-
drawal from the bond releases the person withdrawing
from all liability thereon.

It cannot be doubted that the erasure of Moffitt's name
in the body of the bond, and as signed to it as one of the
sureties, prior to its delivery and approval, without the
knowledge and consent of his co-sureties and after all had
signed the instrument, was a material alteration.    It made
the bond quite different from that signed by the defend-
ants.   The releasing of Moffitt increased the liability of all
the other sureties, and diminished their means of protec-
tion by way of contribution from Moffitt.    But it is
claimed by counsel for the defendant in error that when the
sureties left the bond with Toole to deliver to the county
clerk, they constituted him their agent, and as the bond is
in the same condition as when delivered, they cannot set
up as a defense that Toole erased Moffitt's name without
their consent.    While it is true the principal obligor was
the agent of the sureties in delivering the bond, he was not
authorized by them to change the obligation to their preju-
dice without their consent, or to deliver it in any other con-
dition than it stood when they signed it.    He could no
more bind the sureties, by erasing one of the obligors, than
he could bind them by increasing the amount of the pen-
alty without their knowledge.    The alteration of the bond
in suit was such as to attract the attention of the reader of
the instrument.    It was the duty of the officer who ap-

proved it to have declined to accept it in its altered condition.

It was said by this court in *Cutler v. Roberts*, 7 Neb., 5, that "if there is anything on the face of the bond, or in the attending circumstances, to apprise the obligee that the bond has been delivered by the sureties to the obligor to be delivered to the obligee upon certain conditions, which have not been complied with, the sureties may plead the failure to comply with the conditions as a defense in an action on the bond."

*State v. Craig et al.*, 58 Iowa, 238, was an action upon a bond executed to the state of Iowa by the defendant Craig as warden of the penitentiary. After the signatures of seven of the sureties were obtained, one Geo. H. Smith signed the bond as surety. The signatures of several others were obtained after that. Before the names of the sureties were inserted in the body of the bond, and before it was approved or offered for approval, the name of Smith was erased, partly at his request and partly because he refused to justify in an amount sufficiently large to satisfy Craig. None of the sureties consented to the erasure. They defended on the ground that Smith's name was erased. The court held that the alteration was a material one, and that the sureties who signed prior to Smith, as well as those who signed afterwards, were released.

In *State v. Churchill et al.*, 3 S. W. Rep., 352, the principal defendant, Churchill, was elected treasurer of the state of Arkansas and executed his official bond, with the other defendants as his sureties. The name of Radcliff, signed to the bond as one of the sureties, was erased by Churchill after all the defendants had signed it and before it was delivered or approved. None the sureties had any knowledge of the erasure, except that A. H. Garland, one of their number, then governor of the state, observed the erasure when the bond was presented to him for approval. Upon these facts all the sureties, including Garland, were held not liable.

The rule, we think, was carried too far in the latter case in releasing Garland, who approved the bond with knowledge of the alteration. The principle established by the adjudicated cases is, that where an official bond is altered after the same has been signed, but before its delivery and approval, by the erasure of the name of one of the sureties thereon, and the alteration is plainly noticeable, all the sureties are released who had no knowledge of or did not consent to the alteration, nor ratify it. (*Smith v. U. S.*, 2 Wall., 219; *Dair v. U. S.*, 16 Wall., 1; *Boston v. Benson*, 12 Cush., 61; *Martin v. Thomas*, 24 How., 315; *U. S. v. O'Neill*, 19 Fed., 567; *State v. Craig*, 58 Iowa, 238.)

It is urged by the defendant in error that the sureties having been indemnified by the principal obligor after the defalcation occurred, and with knowledge that Moffitt's name had been erased, they adopted and ratified the bond in the condition in which it was approved, and are liable thereon. Had the sureties consented to the alteration before the approval of the bond, they would have been liable. So, by receiving security from Toole after the defalcation occurred, with knowledge of the change in the bond, they adopted and ratified it as theirs, and are liable according to the conditions therein written.

It does not appear that all the sureties had knowledge of the taking of the security, but as all joined in the motion for a new trial, as it could not be allowed as to all, it was rightly overruled as to all. (*Long v. Clapp*, 15 Neb., 417; *Dorsey v. McGee*, 30 Id., 657.)

The judgment of the district court is

AFFIRMED.

THE other judges concur.