[No. 580.  Decided January 20, 1893.]

THE COUNTY OF KING, *Respondent*, v. ELISHA P. FERRY, EBEN SMITH AND DAVID KELLOGG, *Executors of the last Will and Testament of George D. Hill, Deceased, et al., Appellants.*

OFFICIAL BONDS — ALTERATION — EXTENSION OF OFFICER'S TERM — LIABILITY OF SURETIES.

Although there has been an alteration made in an official bond of a county treasurer before delivery, by the erasure in the body of the bond of the name of a person proposed as a surety, and the substitution of another name without the knowledge or consent of the sureties signing the same, yet where such bond is regular on its face and the erasure incapable of being detected without a close inspection, and the county commissioners have no notice sufficient to put them as prudent men upon inquiry, the sureties must be held iable on the bond.

Where the legislature has extended the term of office of an officer beyond the limit fixed by law at the time of his election and qualification, the sureties upon his bond cannot be held liable for his official acts during such extended term.

*Appeal from Superior Court, King County.*

*Hughes, Hastings & Stedman,* for appellants.

*Ronald & Piles,* for respondent.

The opinion of the court was delivered by

DUNBAR, C. J.— The complaint alleges that George D. Hill, at a general election held in November, 1884, was duly elected county treasurer of King county for the term

of two years from and after the first Monday of January next ensuing, and that, on the 12th day of November, 1884, said George D. Hill, as principal, with John Leary, Joseph F. McNaught, George W. Harris, Elisha P. Ferry, Sutcliffe Baxter and Guy C. Phinney, as sureties, executed his bond to the county of King in the sum of sixty thousand dollars, conditioned that he would pay over all moneys received by him, and for the further discharge of his duties as such treasurer. That in January, 1885, Hill took the oath of office, and entered upon the performance of his duties as such treasurer, and continued to act as such for the full term to which he was elected, and until the 7th day of March, A. D. 1887. That while he was so acting as county treasurer he neglected and refused to account for and pay over to his successor the sum of $29,750.86, and that he converted the same to his own use.

To the allegation of the execution of the bond, the sureties, with the exception of Phinney, pleaded *non est factum.* They also denied failure on the part of Hill to duly account for all sums of money which came into his hands, and to pay over to his successor all sums which he ought properly to pay.

There is quite a history attached to the case, which it is not necessary for the purposes of this opinion to repeat here. During the pendency of the action Hill died, and certain executors were substituted, and upon the final trial of the case below a judgment was rendered against the executors and against the sureties on the bond above mentioned, for the sum of $29,143.60, with interest from March 7, 1887, which was the date of the expiration of Hill's term of office, as continued by act of the legislature of 1886. Before answering, demurrers had been interposed to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrers were overruled.

We will first dispose of the merits of the case by saying that, from as thorough an examination of the testimony as it has been possible for us to make, we do not feel justified in disturbing the conclusions reached by the lower court on questions of fact. Upon the trial of the case it was claimed by the sureties that, when they signed the bond, the name of Henry L. Yesler was in the body of the bond, and that they signed with the understanding that Yesler was to be one of the bondsmen. It appears that after the signing by the parties, but before the delivery to the custodian of the county, the name of Yesler was erased, and the name of Guy C. Phinney substituted. On this state of facts appearing, it is contended by the appellants that the sureties are not responsible, and that the bond as to them is void.

The finding of the court is, that the name that was erased from the body of the bond was carefully and neatly erased, and the name of Phinney placed thereon over the name erased; and that when said bond was delivered, approved and accepted by the commissioners, the bond was in all respects regular upon its face, and that without a close inspection the erasure could not be detected; that the commissioners had no notice sufficient to have put them, as reasonably prudent men, upon inquiry, either from the face of the bond, or from any other source whatever.

An inspection of the bond, which is an exhibit in the case, fully justifies the finding. The name of Guy C. Phinney is written smoothly, and in regular order, after the word "and." It occupies the full space after the name of the preceding surety. It is in the same handwriting with the rest of the bond, evidently written with the same ink, and apparently at the same time, and with the same pen. Without one were specially looking for an erasure, it would not be noticed, and even when attention is called to it, it is difficult to say that any other name ever occupied the space

now occupied by the name of Guy C. Phinney. So that it must be considered as a change before delivery without notice to the obligee, and as such we will discuss it.

On the question of the responsibility of the sureties in a case of this kind there is some conflict of authority, and the case of *Walla Walla County v. Ping*, 1 Wash. T. 343, is cited, and largely relied upon to sustain appellants' views. It does not definitely appear from the opinion in that case whether the blank had been filled before or after the delivery of the bond, but it can be pretty clearly ascertained from a review of the authorities by the court, and its criticisms and arguments, that it sustained appellants' contention. But we are unable to agree with the reasoning of the court in that case. It is conceded in that case that if the alteration had been succeeded by the delivery by the sureties, that the law is well settled that the instrument signed must be considered their bond. But the contention is that it is not enough to constitute a delivery that the bond has been signed and sealed, and put out of the possession of the signer, and that where such bond has been changed contrary to the understanding at the time it was signed, the delivery to an agent or a co-obligor ought not to be construed the true technical delivery. But it seems to us that the pertinent question is, is the party who makes the final delivery to the obligee the agent of the surety, or is he the agent of the obligee? If he is the agent of the surety, then the surety, under the familiar principle that the act of the agent is the act of the principal, is bound; for the alteration has been succeeded by the delivery by the sureties, and the law in that case, as is said by the court in *Walla Walla County v. Ping*, *supra*, is so unquestionably settled that the instrument sued must be considered their bond, that it is idle to cite authorities.

Why should not a principal in a bond be held to be the agent of the sureties, instead of the county, in this case?

He can in no sense be held to be the agent of the county in furnishing his own bond. It would be against the policy of the law, and would defeat the very object which the law has in view in providing for the bond. He is clothed with no authority by the county, but, on the other hand, other officers are especially authorized to pass upon the sufficiency of his bond in every particular, and are made the agents of the county for that purpose. His interest, as far as the bond is concerned, might be said to be antagonistic to the interest of the county. There is no confidence between the treasurer and the county in this respect; but the sureties, on the other hand, by their very act of delivering to the principal their executed bond, to be filed with the proper authorities, establish a relation of confidence and trust — the relation of agency. They have certainly made him an agent for the purpose of delivering the bond that they executed. They have held him out as an agent to the county, and if he has exceeded his authority, and some one has to suffer, it should be the ones who entrusted him with their business, and who said by their acts that he could be relied upon to carry out their intentions; and not the county, which is not in any way responsible for him. The law provides no way by which the county can summon the sureties to appear and make an examination of the bond for the purpose of ascertaining whether all the private understandings between the principal and the sureties have been carried out; and yet, without some such investigation is made, under the appellants' theory, there would be so many pretexts for avoiding bonds that the taking of such obligations would be little less than a farce.

On the other hand, the sureties have it in their power, by the observance of the ordinary rules of prudence, to see that their agreement with the principal is expressed in the bond that is filed. Of course, if there is anything on the face of the bond when it is delivered to excite the suspicion

of the obligee that the bond has been tampered with, or
sufficient to put a prudent person on his guard, he ought
to be held bound to make an investigation before accepting
the bond.    But to hold the obligee responsible where the
bond is good on its face, and where he has no notice until
after the defalcation has occurred, is, in our judgment, not
only wrong in principle, but is also opposed to the great
weight of authority; and a brief review of the authorities
cited by the appellants will show that on principle they
nearly all sustain this view.

Sec. 44 of Murfree on Official Bonds, is as follows:

"If a surety executes a bond and delivers it to the prin-
cipal obligor upon conditions agreed upon between them,
and with instructions to fill blanks or procure other sure-
ties, he makes the principal obligor his agent, and is bound
by his acts done within the scope of his apparent authority.
Unless the obligee has notice of the conditions and instruc-
tions, he cannot be bound by them.    The surety confides in
the principal, the obligee does not."

Sec. 53 of the same book is but a repetition of the doc-
trine announced in § 43, viz.: That where the obligee has
notice of the condition it cannot recover on the bond, and
that it is the duty of officers entrusted with the authority
to take and approve official bonds, to use ordinary care and
prudence to protect the security, as well as to see, in the
interests of the public, that the bond is valid, and the se-
curity sufficient.    Sec. 756 states the English rule as being
that the alteration is fatal to the validity of the instrument,
"if made after execution, and while   .   .   .   in the pos-
session or under the control of the party seeking to enforce
it," which does not affect the case under consideration.
Sec. 760 cites cases sustaining the rule that the validity of
the bond would be abrogated, if after its execution one of
the signatures is erased; but an investigation of the cases
cited by the authority, which are also the cases cited by
appellants, reveals the discriminating fact that there was

sufficient notice given to charge the obligee with the duty
of investigation.    Thus, in *Smith v. United States*, 2 Wall.
219, the court, while holding the surety harmless, also in
the argument distinguished it from cases where no notice
of the alteration had been given to the obligee.    It says, in
stating the case:

"Materiality of the alteration is not denied, and the
plaintiffs admit that it is apparent on the face of the in-
strument."

The instrument showed on its face that it had been
signed by one Hoyne as surety, but that his name had been
erased after the execution by the other surety.    The in-
strument showed this on its face, and the judge who had
approved the bond testified that it had presented the same
appearance when it was presented to him for approval.
The court also says it is claimed by the plaintiffs that "it
left the liability of all concerned precisely as it would have
stood if the person whose name was erased had only *prom-
ised* to sign, and had not fulfilled his engagement," which
is the case at bar, and which condition of things the court
in that case, at least inferentially, holds would not release
the sureties.    In *State v. Craig*, 58 Iowa, 238 (2 N. W.
Rep. 301), the surety whose name was afterwards erased
had actually signed the bond, and the signature itself was
erased by the drawing of two lines through it with purple
ink; differing from this case in the two essentials of being
actually signed, and in the notice given to the obligee.
*McCramer v. Thompson*, 21 Iowa, 244, was a case where a
promissory note had been changed.    The signing had been
actually done, and the payee had notice.    The distinguish-
ing feature of notice was commented upon by the court,
for it said:

"When presented to the payee, one of the names was
obliterated or erased.    This could be seen, was seen and
talked about.    .   .   .    The note then being in this con-

dition, he was put upon inquiry. Thus situated, did he manifest the diligence required by law?"

Thus it will be seen that the decision was based squarely on the ground of want of proper inquiry after notice. *Hessell v. Johnson*, 63 Mich. 623 (30 N. W. Rep. 209), was decided on the express ground that sufficient notice had been given to the obligees to put them on inquiry. In *Sharp v. United States*, 4 Watts, 21, the act of congress authorized a bond with two or more sureties. This act was recited in the bond, and the court held that the sureties had a right to believe that it was the intention of all the parties that the bond was to be taken in strict conformity with the act, and that the other surety whose name was on the bond when he signed would also execute the bond. In this case, also, the government had notice that the bond had not been executed by all the sureties mentioned in the bond.

*Allen v. Marney*, 65 Ind. 399, cited by appellants, as we read the case, squarely sustains the rule laid down by us above. There the court decides that where the surety on the appeal bond entrusted the bond to the principal, the principal becomes the agent of the surety, and the officer approving the bond becomes the agent of the other party. The sureties were discharged, but upon the ground that sufficient notice had been given by the appearance of the instrument itself to put the obligee upon inquiry. The court quotes approvingly a comment by Judge Redfield on *Insurance Co. v. Brooks*, reported in 3 Am. Law Register (N. S.), 402, where that author, in a review of this subject, among other things, says:

"That one who signs a bond, as surety, upon the assurance of his principal that he shall also have other responsible co-sureties, which are never procured, and the bond, nevertheless, delivered, is deceived and defrauded of his indemnity, no one can question. But whether he shall himself bear the loss, or visit it upon the obligee, is quite a

different question. And it seems to us, upon principle, that where there is nothing upon the face of the paper indicating that other co-sureties were expected to become parties to the instrument, and no fact brought to the knowledge of the obligee before he accepts the instrument calculated to put him on his guard in regard to that point, and which would naturally have led a prudent man, interested in the opposite direction, to have made inquiry before accepting the security, the fault cannot be said to rest to any extent upon the obligee.''

In *Ward v. Churn*, 18 Grat. 801, the same distinction as to notice was maintained, the court saying:

''It is not necessary to consider this question in respect to instruments which are apparently on their face complete and perfect, according to the intention of the parties. It is only necessary to consider it in reference to instruments such as that in the present case, which indicate on their face that they are *not* complete, and that it was intended that other signatures should be affixed.''

*Fletcher v. Austin*, 11 Vt. 447, was a case where the names of the obligees appeared in the body of the bond, who did not execute the same, and the court held that sufficient to put the obligee on inquiry to ascertain if those who did sign had consented to its being delivered without the signatures of the others. In *Hagler v. State*, 31 Neb. 144 (47 N. W. Rep. 692), the surety Moffitt had signed the bond before the defendant signed and executed it. Moffitt's name was afterwards erased by drawing a pencil line through it. The court said that the alteration of the bond was such as to attract the attention of the reader, and that it was the duty of the officer who approved it to decline to accept it in its altered condition. The court, in concluding, says:

''The principle established by the adjudicated cases is, that where an official bond is altered after the same has been signed, but before its delivery and approval, by the erasure of the name of one of the sureties thereon, and the

alteration is plainly noticeable, all the sureties are released who had no knowledge of or did not consent to the alteration, nor ratify it,'' citing the cases we have reviewed above.

In *Pawling v. United States*, 4 Cranch, 219, the obligee had notice of the fact that the additional securities who did not sign were named in the body of the bond. *Linn County v. Farris*, 52 Mo. 75, is a very meager case, and it does not appear from the opinion whether or not the bond was regular on its face, and the question of notice is not discussed.    But that case is criticised in *State v. Potter*, 63 Mo. 212, a well considered case, where it is held that the agreement of a surety with his principal that the latter shall not deliver a bond till the signature of another be secured as a co-surety, will not relieve the surety of his liability on the bond, although the co-surety is not obtained, where the obligee takes the bond without notice; and such is now the well established rule in Missouri.

*Linn County v. Farris, supra*, is the only case cited by appellants where it does not appear that the obligee had sufficient notice to warn him that the agent of the sureties had exceeded his authority by changing the conditions agreed upon between him and the sureties, sufficient to put him upon inquiry.    And this, we think, is the only logical ground upon which the sureties can be exonerated at all. The obligee in such a case, having notice of the fraud perpetrated upon the sureties, should be estopped from recovering the benefit of it.    But if no such notice is given to the obligee, then the sureties should be estopped from transferring the burdens resulting from loose methods of business and their misplaced confidence in unworthy agents to the shoulders of others who are in no way to be blamed, and who have been in no way instrumental in bringing about the loss.

We have especially reviewed all the cases cited by ap-

35—5 WASH.

pellants, on the theory that they have presented the most favorable cases that can be found tending to sustain their contention. Some of the old English authorities sustain the doctrine contended for by appellants on the ground, which cannot be disputed as an abstract proposition of law, that a deed or instrument under seal, to be binding, must be in writing, signed, sealed and delivered by the parties, and that if any change has been made in the instrument it is not the instrument which the parties made, and that if it is given to another party after execution, to be delivered upon certain conditions being performed, it is simply in *escrow*. But as we have above said, this ignores the doctrine of agency in cases of this kind, and does not really conflict with the principle that these confidential conditions, to be made effective, must be brought to the notice of the party who is to be affected by them; and the great weight of modern authority sustains the rule laid down by the supreme court of the United States in *Dair v. United States*, 16 Wall. 1, that a bond, perfect upon its face, apparently duly executed by all whose names appear thereto, purporting to be signed and delivered without a stipulation, cannot be avoided by the sureties upon the ground that they signed it on a condition that it should not be delivered unless it was executed by other persons, who did not execute it, where it appears that the obligee had no notice of such condition, and there was nothing to put him upon inquiry as to the manner of its execution, and that he had been induced upon the faith of such bond to act to his own prejudice. Many cases have gone beyond this in holding sureties responsible, but few if any of the modern cases have relaxed the rule for the purpose of exonerating them. The rule laid down in *Dair v. United States*, *supra*, was affirmed by the supreme court of the United States in *Potter v. United States*, 107 U. S. 126 (1 Sup. Ct. Rep. 524); the court there holding that the surety re-

lied upon the good faith of the principal; that he clothed him with apparent power, and that he is in equity estopped from claiming as against the government the benefit of his private instructions to his agent.

The case of *State v. Peck*, 53 Me. 284, may be said to be the leading American case on this interesting question, and a case the reasoning of which has since been closely followed and adopted by the supreme court of the United States. The authorities are reviewed with discrimination and the result announced is in harmony with the quotation from Chancellor Kent that, "whoever deals with an agent constituted for a special purpose, deals at his peril, when the agent passes the precise limits of his power, though, if he pursues the power as exhibited to the public, his principal is bound, even if private instructions had still further limited the special power." In fact, this is now the almost universal American holding, the later cases, in many instances, directly abrogating the early decisions. Thus. the doctrine announced in *People v. Organ*, 27 Ill. 29, which is a case generally cited to support the theory contended for by appellants, was substantially overruled, or at least the principles upon which it was based were overruled, in *Smith v. Board of Supervisors*, 59 Ill. 412; *Bartlett v. Board of Education*, 59 Ill. 364; *Comstock v. Gage*, 91 Ill. 328; and in *City of Chicago v. Gage*, 95 Ill. 593, in an opinion reviewing all the authorities, the case of the *People v. Organ* was specially mentioned, and the doctrine on which it was based was condemned and the rule announced as enunciated in *State v. Peck*, 53 Me. 284.

All these later cases are based upon the doctrine of *Teoira v. Evans*, referred to in 1 Anstruther, 228, a case which to-day is pretty generally conceded to sustain principles in harmony with public policy, and the application of which compels the burden of loss to fall upon the party who by his actions and by the apparent authority with

which he clothed his agent, has made the loss possible.
The following, among other cases which we have examined, sustain this contention: Brandt on Suretyship and
Guaranty, § 603; *Inhabitants, etc., v. Huntress*, 53 Me. 89;
*Cooper v. De Mainville*, 27 Pac. Rep. 86; *White v. Duggan*,
140 Mass. 18 (2 N. E. Rep. 110); *Mathis v. Morgan*, 72
Ga. 517; *Tidball v. Halley*, 48 Cal. 610; *Jordan v. Jordan*,
10 Lea, 124; *Taylor County v. King*, 73 Iowa, 153: *Hall
v. Smith*, 14 Bush, 604; *Ordinary v. Thatcher*, 41 N. J.
Law, 403; *Cutler v. Roberts*, 7 Neb. 4; *State v. Pepper*, 31
Ind. 76; *Butler v. United States*, 21 Wall. 272; *Nash v.
Fugate*, 24 Grat. 202; *Trustees v. Sheik*, 119 Ill. 579 (8
N. E. Rep. 189); *Harvey v. State*, 94 Ind. 161; *Lucas v.
Owens*, 113 Ind. 521 (16 N. E. Rep. 196); *Carroll Co. v.
Ruggles*, 69 Iowa, 269 (28 N. W. Rep. 590); *Belloni v.
Freeborn*, 63 N. Y. 383; *Fullerton v. Sturges*, 4 Ohio St.
535; *Insurance Co. v. Clinton*, 66 N. Y. 326; Mechem on
Public Officers, § 279, and authorities there cited.

In fact, the rule not only rests securely upon the law of
agency, which makes the principal responsible for the acts
of his agent, regardless of private understandings, when he
has held the agent out to the world as possessing general
powers over the matter in hand, but it also rests on the
equitable doctrine that where two innocent parties suffer,
the injury must be sustained by the one who put it in the
power of another to do the injury. And for these reasons
it ought to be, and is almost universally, sustained.

But there is another proposition raised in this case that
is vastly more troublesome. Under the law existing at the
time Hill was elected and at the time the bond was executed, the treasurer's term of office expired on the first
Monday in January, 1887, but on February 4, 1886, by
legislative enactment, his term of office, in common with
the other county officers in the county, was extended to the
first Monday in March, 1887.

It appears from the testimony, and is so found by the
court, that $22,064.34 of the amount of delinquency came
into his hands after the first Monday of January, 1887,
and the contention of appellants is that the sureties in any
event are not responsible for that amount; that the sureties
of an officer, who is chosen periodically and to hold an
office until his successor is chosen and qualified, are bound
for the period only for which the officer was chosen.

The importance of this case, not only as it affects the
rights of the sureties, but as affecting the public in the ad-
ministration of the different departments of the govern-
ment, and the necessity of guarding the public funds as
far as is consistent with private rights, have led us to an
extended investigation of the authorities bearing on the
subject, and we have examined them both with reference
to number and cogency of reasoning. The authorities can-
not be reconciled, some courts holding that the bond is
made in contemplation of the law and must be construed
with reference to the law governing the office, and where
the law provides that the term of office shall continue until
the successor is elected and qualified, which is the law gov-
erning this case, that the bond is given not only for the
statutory term, but for the further time which may elapse
between the end of the expressed statutory term and the
time when the successor is elected and qualified; that the
law becomes incorporated into the bond; that the sureties
are bound to know that his right to the office may extend
beyond the year, and that this possible extension is taken
into consideration and provided for in the bond. Such is
the doctrine of *State v. Berg*, 50 Ind. 502; *Commonwealth
v. Drewry*, 15 Grat. 1; *Pickering v. Day*, 3 Houst. 474;
*State v. Kurtzeborn*, 78 Mo. 98; *Thompson v. State*, 37
Miss. 518; *McAffee v. Russell*, 29 Miss. 84; *Hughes v.
Smith*, 5 Johns. 168; *People v. Beach*, 77 Ill. 52; *Kindle*

*v. State*, 7 Blackf. 589; *Exeter Bank v. Rogers*, 7 N. H. 21; *State v. Daniels*, 6 Jones (N. C.), 444.

Some of these are cases arising on official bonds and some of them on bonds of corporation officers, and there have been attempts by some courts holding the opposite doctrine to discriminate them. But while there may be discriminating circumstances in some of them, they are all decided on the same general principles enunciated above and generally rely on the same early cases to sustain them, and must therefore be conceded to logically sustain respondent's position.

But after a great deal of deliberation, and, we must admit, some hesitation, we are constrained to adopt the opposite view, which is amply sustained by authority and we think by better reasoning. No consideration of the interests of the public will justify a court in extending by construction the obligation of a citizen under his contract, beyond the scope of its natural import. The contract which embodies this obligation, like any other contract, must be construed to give effect to the intention of the parties, and that intention is to be gathered from the language employed and the circumstances surrounding the execution of the instrument. Now, what were the circumstances surrounding the execution of this bond, and what length of time would these bondsmen naturally think they were contracting with reference to? The correct answer to the last question determines their liability. There need be no artificial rules of law applied. It is a simple question of intention gathered from the language of the contract, read in the light of the surrounding circumstances.

At the time this bond was given the term of office of the treasurer as provided by law was two years. It is argued that the bondsmen entered into their obligation in view of the possible modification of their liability by the legislative

assembly, and with notice that the legislature would have a right to continue the incumbent in office beyond the term for which he was elected.   So far as the first proposition is concerned, the legislature would not have any right to pass a law that would change the terms of the contract or in any way impair its obligation; and so far as the second proposition is concerned, while the sureties might be held to take notice that the legislature could extend the term, they would not be required to take notice that the legislature in such an event would make no provision for the giving of a bond by the treasurer for the extended term.   The sureties had a right to take notice of the law as it existed, and to contract with reference to the law as it existed. That is, the law which would naturally be in their minds when they entered into the contract.   And the idea that they would at such a time enter into a speculative calculation of what the law might be in the future, and shape their contract with reference to such possible change, is a strained one.

The law at that time made the office one of a definite term; that term was two years; and the sureties had a right to, and no doubt did, take that law into consideration, and that was the law that was imported into their contract. There is no doubt that the central idea was that the term was for two years.   This was the law; this was the ordinary state of affairs, and the ordinary time for which bonds for county officers were given.   A man might willingly go on a bond for two years who would hesitate or absolutely refuse to go on for a longer period.   So far as the term "until his successor is elected and qualified" is concerned, while it might have great significance when applied to the officers of private corporations, it can have none here, for the law provides when the officer elect shall qualify, and if he does not qualify within the time prescribed the commissioners can declare his office forfeited, and appoint an-

other officer. Many of the courts hold that the bond will remain in force for a reasonable time, a sufficient time in case of accident, surprise or emergency to permit the authorities to provide for other security; but there is no question of reasonable time in this case.

In this instance, when the term of office for which the bond was given had expired, another bond should have been required, and if the authorities have neglected their duty, or the legislature has inadvertently failed to make provision for a proper bond, it is inequitable and unjust to make the sureties for the original term responsible for such neglect and inadvertence. It is well said in many of the cases, that if the sureties can be held responsible for two months longer than the stated term, they can be held for two years, or for any indefinite term, and no such construction can be placed upon this bond without doing violence, not only to the language of the bond itself, but to the spirit of the law which provides for it. But it is stated that the language of this bond is peculiar, inasmuch as the bond states when the term of office commenced, but does not state when it ends, and further provides that it shall remain in effect "while he shall act as such county treasurer under such election." We do not think there is any substantial difference between this and the ordinary bond.

At the time the bond was given the treasurer's term of office expired on the first Monday in January, and the sureties must be presumed to have contracted with reference to the law at that time, and that they had that time in mind when they used the words "under such election," and not the time that he was acting under the subsequent act of the legislature. In other words, they are presumed to have contracted with reference to laws passed antecedent to the date of the bond, and it is almost universally held that expressions of this kind in bonds will not be construed beyond the liability imposed by the law, unless it is clearly and

explicitly made manifest that the sureties intended that their obligation should reach beyond the term prescribed by the law, where the term is definite.

In *Peppin v. Cooper*, reported in 2 Barn. & Ald., star page 431, where the office of collector under the act of parliament was an annual office, and the bond, after reciting the appointment of H. W. to be collector under the act, was continued ''for the due collection by H. W. of the rates and duties at all times thereafter,'' it was held that the due collection of the rates for one year was a compliance with the conditions of the bond. So in *Lord Arlington v. Merricke*, 2 Saund. 411, the general terms were construed to be restricted by the recital stating an appointment for a specified time.    In the case of the *Liverpool Water Works Co. v. Atkinson*, 6 East, 507, the subsequent stipulation of the bond was, ''during the continuance of his employment and so long as he should continue to be employed.''    These words were held not to extend the responsibility beyond the term.    And as sustaining the proposition that when the office is *in fact* for a specified term, although not so recited in the bond, still the bond only covers the term specified, we cite *Wardens, etc., v. Bostock*, 2 Bos. & P. ( N. R.) 175; and *Hassell v. Long*, 2 Maule & S. 363, and such we think is the universal English holding; and while this bond does not recite the ending of the term, it recites the commencement of the term, and is as much a reference to the term that existed as if it had been more minutely described.

One of the earliest cases decided in the United States was *Bigelow v. Bridge*, 8 Mass. 274.    The bond in that case was as follows:

''The condition of this obligation is such that, whereas the above bounden Ebenezer Bridge is chosen treasurer of the said county of Middlesex, and hath taken upon him that trust; now, therefore, if the said Ebenezer Bridge shall faithfully discharge the duties of the office of treasurer of said county, and account for all sums of money

which he shall receive for the use of the said county, then this obligation shall be void, otherwise to remain in full force."

The provision of the statute of Massachusetts at that time was substantially like ours, viz.: That "the county treasurer shall continue in the said office for the term of one year and until some other person shall be chosen and qualified," with a provision for an annual election. It will be observed that the bond was absolutely without limit as to time, and if literally construed its obligatory force would have been indefinitely extended; but the court held the bond good only for the year, and in rendering the opinion, after referring to the statute, said:

"But the choice of county treasurer being by that statute annual, it is apparent that the bond required by it was intended for the protection of the public so long only as the person chosen should continue in office in virtue of such election."

The securities of an officer appointed for a limited time are only liable for his official acts during the term for which he was appointed. *Moss v. State*, 10 Mo. 338.

The same doctrine is announced in *State Treasurer v. Mann*, 34 Vt. 371; *Welch v. Seymour*, 28 Conn. 387; *United States v. Kirkpatrick*, 9 Wheat. 720; *Chelmsford Co. v. Demarest*, 7 Gray, 1; *County of Wappello v. Bigham*, 10 Iowa, 39; *Dover v. Twombly*, 42 N. H. 59; *Insurance Company v. Clark*, 33 Barb. 196; *Patterson v. Inhabitants, etc., Freehold*, 38 N. J. Law, 255; *Miller v. Stewart*, 9 Wheat. 680, and many other cases too numerous to enumerate and all based upon the doctrine announced in the English cases we have cited, and the case of *Bigelow v. Bridge, supra*.

There is some contention in this case as to what the rule is in California. In *People v. Aikenhead*, 5 Cal. 106, it was decided that the sureties on the bond of an officer for one term should not be liable for any act done by him after election to a second term. *Brown v. Lattimore*, 17 Cal.

93, was on a dead level with the case at bar.    Brown was elected for two years and gave a bond for the performance of his duties for the period for which he was elected, and until the election and qualification of his successor.    Under the law in force at the time his bond was given, his term would have expired on the first Monday in October, 1859, but the legislature extended his term to the first Monday in January, 1860.    It was held that the sureties were not responsible for the official conduct of the treasurer during the time for which the term was extended; that the legislature had no power to extend their liabilities beyond the prescribed term of the contract.    Said the court:

"They were to be bound, it is true, until the qualification of a successor, but if the legislature had not interposed the period of liability would have been terminated by such qualification on the first Monday in October, 1859.    So far as they are concerned the effect of the extension was to create a new term to commence at that time and continue until the first Monday in January, 1860.    For the conduct of the treasurer during this term they did not undertake to be responsible and cannot therefore be held."

And the decision was based on the principles enunciated in *People v. Aikenhead, supra.*    But it is contended by appellants that *Brown v. Lattimore* has been overruled in *Placer County v. Dickerson,* 45 Cal. 12, and *Fresno Enterprise Co. v. Allen,* 67 Cal. 505 (8 Pac. Rep. 59).    *Brown v. Lattimore* was not referred to in *Placer County v. Dickerson,* and we do not think it was the intention of the court to overrule it or to overrule any principles announced in it.    The latter case was not a case where a new term was created by the legislature, which was the point decided in *Brown v. Lattimore,* but it was a case where the incumbent refused for one day to turn the office over to his successor. It was by the unlawful act of the principal that he held the additional day, and the court said that the responsibility of the defendants for the official acts of the treasurer under

the circumstances was the same as though the latter had by the expiration of his term continued in the office pending proceedings by *quo warranto* to oust him from it, and in that case their liability would be unquestionable. *Fresno Enterprise Co. v. Allen* decided that the obligations of the bond in that case, which was a private corporation, could not be extended, and it based its decision on *Bigelow v. Bridge* and *Hubert v. Mendheim*, 64 Cal. 213 (30 Pac. Rep. 633). By referring to *Hubert v. Mendheim*, it will be found that the court decided that an official bond is given for and has reference to a particular official term, and the demurrer to the complaint in that case was sustained because it did not state that the breach occurred during such term; and the doctrine announced in *State v. Aikenhead* and *Brown v. Lattimore* was approved and reaffirmed. The case of *Priet v. De La Montanya* (Cal.), 22 Pac. Rep. 170, does not undertake to change the rule, so that *Brown v. Lattimore* must be considered the settled law in California.

We think there is nothing in the bond in this case to take it out of the rule announced in the cases we have cited, and as said by the supreme court of California, quoted above, that as to these sureties the extended term was a new term for which they are in no way responsible.

We have examined the cases cited by respondent which hold that where additional duties are imposed upon the officer, as for instance where additional funds are made by law to come into his hands, that the sureties were held responsible for the safe keeping of such funds. But an entirely different principle is involved in such cases, and they can have no bearing on the case at bar. Neither can the position of the respondent be controverted, that the legislature has constitutional authority to change the statutory term of office; but that authority does not carry with it the right to extend the operations of a contract or change its liabilities.

Whether or not the respondent's contention be correct, that the plea of *non est factum* does not put in issue the question of the alteration of the bond, is not now necessary to determine.    But we are of the opinion that even under the code practice the answer in this case is sufficient to raise the question of defendant's liability during the extension of the term.    Some strong cases are cited by respondent from Indiana, but those decisions are based on a sweeping statute, which provides that ''all defenses, except the mere denial of the fact alleged by the plaintiff, shall be pleaded specially.''

The extreme length of this opinion renders impracticable an extended review and analysis of the authorities on this question, but when once we recognize the legal proposition that the obligations of the bond do not reach to the extended term, the court will take notice of the statutory law which is a general one, and would not allow on its own motion a judgment for the defalcation occurring during that time, even if the defendant did not answer at all, any more than it would allow judgment for defalcation during two terms of the officer, when the complaint showed on its face that the action was on a bond given for one term.    In other words, the plaintiff could not take judgment for more than its complaint showed it was entitled to under the law.

The respondent argues that even if the court should hold that these matters could be admitted under this plea, that they are bad pleas because they are joint pleas, and are no defense to some of the defendants, and being joint pleas and bad as to some they are bad as to all.    That principle has no application to this case, for we hold that none of the defendants can be held responsible in this action for defalcations occurring during the extended term.    The principal is no doubt responsible in a proper action, but this is an action on a joint bond, and the liability of all the parties to the bond, so far as the bond itself is concerned, terminates at the same time.

We have examined other errors alleged by the appellants, but do not sustain them.

Considering the time that has been devoted to this case, both in this court and the court below, and the great amount of costs which a new trial would necessarily involve, we deem it advisable, under the authority conferred on this court by § 1429 of the Code of Procedure, to decree that, if the respondent within thirty days from the filing of this opinion, shall file with the clerk of this court its agreement to remit the sum of $22,064.34 from the judgment of $29,143.60, obtained by it in the court below, the remainder will be allowed to stand; but upon its failure so to agree, the judgment will be reversed and the cause remanded for a new trial. The appellants will in any event recover their costs of this appeal.

ANDERS, STILES and SCOTT, JJ., concur.
HOYT, J., not sitting.