POTTER *v.* UNITED STATES.

1. The local land-officers are not required to meet and jointly consider the proof of settlement and cultivation offered by claimants under the pre-emption laws.

2. In his accounts with the government, a receiver of public moneys in a land district charged himself with money which he, or, during his absence, his authorized agents, had received as the purchase price of public lands entered pursuant to the pre-emption laws. The United States, on his failure to pay over the money, brought suit on his official bond. *Held*, that neither he nor his sureties can defeat a recovery by setting up irregularities in the proceedings by which the entry of the lands was allowed.

ERROR to the Circuit Court of the United States for the District of Minnesota.

This was an action brought against George F. Potter and his sureties on his official bond as receiver of public moneys in the Pembina land district in the Territory of Dakota. The bond bears date Aug. 3, 1870, and its condition is that he shall " truly and faithfully execute and discharge all the duties of his said office according to law." The declaration alleges that he was appointed such receiver for four years beginning June 7, 1870; that after the execution and delivery of the bond and prior to June 30, 1874, there legally came into his hands, as such receiver, the sum of $8,564.77, which he refused and neglected to account for, or to pay over to the United States.

Only the sureties on the bond answered.  Their defence is as follows: " That from and after September 30, 1873, there never was any register at the land-office at Pembina; that there were no legal sales of land or receipts of moneys at said land-office for any purpose during all the time from said 30th of September, to the end of the time that said Potter held the office of receiver of said land-office."

The parties waived a jury, and submitted the issues of fact as well as of law to the court.  Upon the trial, the United States offered in evidence certified copies of the accounts rendered by Potter for four quarters, to wit, the quarters ending respectively Sept. 30 and Dec. 31, 1873, and March 31 and June 30, 1874, which showed a balance against him of $8,564.77, which he had not accounted for or paid over.

By way of defence testimony was offered which, as stated by the bill of exceptions, proved that one Brashear, from the summer of 1871 until the expiration of the term of office of Potter, was register of the land-office at Pembina; that from and after Sept. 23, 1873, Brashear was not present at said land-office, but on the day last named " left Pembina and said land-office, and never returned, but continued to hold said office of register during Potter's term of office," which expired in June, 1874; " that before leaving the office he signed a large number of printed blanks, covering all the various business of the register of said land-office, and left them with one William R. Goodfellow, who was a clerk in the custom-house in said Pembina, and had nothing to do with said land-office, except that he was authorized by said Brashear to act for him in his absence; and that all the business of said land-office, as far as the said register was concerned, was done by said Goodfellow with the blanks so signed by said register as aforesaid."

The bill of exceptions further shows that testimony was offered which proved " that the said receiver, George F. Potter, left said Pembina and said land-office on the 8th or 9th of April, 1874, and did not return until the last of June or the beginning of July, 1874, and that no one was in charge of said land-office while said receiver was gone except said Goodfellow; that on the return of said Potter he received no money from said Goodfellow on account of said office, and that he did

receive from his son the sum of $200 or $300, and no more; that Goodfellow took in, during the absence of said Potter, some $1,400 of money belonging to said land-office, and paid the same over to said son of said Potter, from whom it was all stolen, except the $200 or $300 paid over by him to said Potter."

Upon this evidence the sureties on the bond of Potter contended that " they were not liable for any moneys received at said land-office for any business done therein in the absence of either the register or receiver."

The court decided against the contention of the defendants, and rendered judgment against them for the sum of $6,406.30, which included moneys received by Potter after as well as before Sept. 23, 1873. To this ruling and judgment of the court the defendants excepted. The purpose of the writ of error is to obtain a review in this court of the question raised by this exception.

*Mr. Charles E. Flandrau* for the plaintiff in error.

*Mr. Assistant Attorney-General Maury* for the United States.

MR. JUSTICE WOODS delivered the opinion of the court, and, after stating the case as above, proceeded as follows : —

The answer does not allege that the moneys for which the court rendered judgment against the defendants were received by Potter after Sept. 23, 1873, and during the absence of Brashear, the register, nor does the bill of exceptions profess to state all the evidence in regard to the absence of Brashear and Potter from their respective offices. Passing by these defects in the record, we shall consider the question presented by the exception of the defendants.

Their first contention is that they are not responsible for any moneys received by Potter, the receiver, during the time that Brashear, the register, was absent from the land-office. The ground of this contention is as follows: The record shows that during Potter's term of office all sales of land were either by pre-emption, or commutation of homesteads. The argument applies only to pre-emption sales. Sect. 2259 of the Revised Statutes prescribes what persons are entitled to pre-emption, and upon what terms the right of pre-emption is

accorded to the settler upon the public lands.   Sect. 2263 declares that "prior to any entries being made under and by virtue of the provisions of sect. 2259, proof of the settlement and improvement thereby required shall be made to the satisfaction of the register and receiver of the land district in which such lands lie," &c.   The plaintiffs in error contend that these officers constitute a tribunal, and that no business can be done without the presence and action of both.   And as Brashear was absent from Sept. 23, 1873, to the close of Potter's term, there could be no legal pre-emptions during that time, and that all moneys paid for pre-emptions before the conditions prescribed by law had been complied with were not payments made to the United States, but unauthorized and unofficial payments made to the receiver, for which his sureties were not liable.

In our judgment this contention has no ground to stand on. There is no expression in the statute which requires the register and receiver to sit at the same time and concurrently pass upon the sufficiency of the proof of settlement and improvement by pre-emptors.   If the proof is submitted to the register on one day and he is satisfied, there is nothing in the statute which implies that it may not be lawfully submitted, at some subsequent day, to the receiver for his approval.   The oath of the pre-emptor, which is part of the proof required by law, may be taken before either the register or receiver.   Sect. 2262.   *Lytle* v. *State of Arkansas*, 9 How. 314.   They are nowhere required to meet and jointly consider the sufficiency of the proof offered.   If both are satisfied, that is all the law requires.

It does not appear in the record that the proof by pre-emptors of the settlement and improvement of the lands for which money was received by Potter during the absence of Brashear had not been made to his satisfaction before he left the land district.   If such proof had been made to the satisfaction of Brashear all that was necessary to complete the right of the pre-emptor was the approval of Potter, which was effectually expressed by his receipt of the money.

What the law requires is that the conditions requisite to a pre-emption entry should be shown to have been performed to

the satisfaction of both officers. As it does not appear in the record that the proof was not made to the satisfaction of both officers, it must be presumed that the money received by Potter in the absence of Brashear was justly due the United States and was received by him in his official capacity. We find nothing either in the cases or the statutes cited by the plaintiffs in error which tends to establish a different construction of the law.

But if it be conceded that the statute required the register and receiver to pass concurrently upon the proof of the settlement and improvement before lands could be entered by a pre-emptor, we are, nevertheless, of opinion that the plaintiffs in error are responsible for the moneys received by Potter.

The moneys were received by him as public moneys, for he charged himself with them in his accounts with the government. They were paid as public moneys by pre-emptors as a consideration for title to portions of the public domain. If any objection could be raised to the transfer of title to the pre-emptors, it could be made by the United States only. But the United States makes no objection. On the contrary, all objection is waived by the bringing of this suit by the government to recover the moneys paid by the pre-emptors for their lands. These moneys are, therefore, public moneys. They belong neither to Potter nor the pre-emptors, and must, consequently, be the property of the United States. It was, therefore, his duty as receiver to account for and pay to the United States the moneys so received, and it does not lie in the mouths of the sureties on his official bond to raise an objection to the payment of the moneys to him, which he could not raise, and which is not raised by the pre-emptors, or the United States. Their responsibility for the moneys so received is therefore clear.

In support of this view, the case of *King* v. *United States*, 99 U. S. 229, is in point. That was a suit brought against one Chase, a collector of internal revenue, and the sureties on his official bond, to recover taxes collected by him, and never accounted for or paid over. The facts were that on June 1, 1868, the Toledo, Wabash, and Western Railroad Company was indebted to the United States in a large sum for the five per

cent tax for interest paid on its first-mortgage bonds. The tax was, on the day named, paid to Chase by the treasurer of the company. At the time of the payment the treasurer delivered to Chase the monthly returns of the taxes so due, in the form prescribed by law, signed by him as treasurer, but not sworn to, and which had never been filed with or delivered to the assessor. Chase delivered to the assessor all these returns, except those for August, September, and October, 1867, which were never delivered. He did not at any time make mention of them in his report to the government, and he retained the amount, $24,923, paid by the company as the tax upon the returns for the three months just mentioned. Five years after his receipt of this money, and when he had become insolvent, suit to recover it was brought on his official bond. The defence set up by his sureties was that, as the money was not received by him, on any return made to the assessor, or on any assessment of said taxes made by the assessor or by the Commissioner of Internal Revenue, and as the return delivered to Chase by the treasurer of the company was not verified by oath, it was a voluntary deposit of money in his hands by the treasurer, and was not received by him in his official capacity; that it was not his duty to receive it for the government; and the sureties were not liable because its receipt was an unofficial act.

But the court held that the payment of the taxes to the collector was a good payment to him in his official capacity, that the money so paid was the money of the United States, and that the sureties on his bond were responsible for it.

This case is so apposite to the question in hand, and so conclusive, as to require no further remark.

It is next contended by the plaintiffs in error that they are not liable for the $1,400 received during the absence of Potter, extending from April 9 to June 30, 1874, by the person whom he had left in charge of his office, because that person had no authority to perform any of the duties of receiver.

There are two sufficient replies to this contention. First, no such defence is set up in the answer or amended answer of the plaintiffs in error. They cannot complain that the Circuit Court did not give effect to a defence which they did not think it worth while to plead. Second, it is not made to appear by

the bill of exceptions that any money was paid to Goodfellow, the person left by Potter in charge of his office, which was not due the United States from pre-emption entries made by persons who had proved the settlement and improvement of the land to the satisfaction of both the receiver and register. If, therefore, this contention of the plaintiffs in error is sustained, we should, in effect, decide that the sureties of the receiver would not be answerable for public moneys paid, with his concurrence and assent, to his assistant or cashier, but only for moneys actually paid into the hands of the receiver himself. It requires no argument to expose the fallacy of such a conclusion. If a public officer sees fit to allow the money of the government to be paid during his absence from his office into the hands of his agent or servant, it is a good payment to him, and the risk is with him and his sureties and not with the government.

*Judgment affirmed.*