PARK DISTRICT OF the CITY OF BIS-
MARCK, a public corporation,
Plaintiff and Respondent,

v.

Carl BERTSCH et al., Defendants,

and

Margaret H. ERLING, Louise Garske, Wil-
liam R. Mills and Betty Mills, De-
fendants and Appellants.

No. 8394.

Supreme Court of North Dakota.

July 7, 1967.

Rehearing Denied Sept. 1, 1967.

Zuger, Zuger & Bucklin, Bismarck, for plaintiff and respondent.

William R. Mills, Bismarck, for defendants and appellants.

TEIGEN, Judge (on reassignment).

This is an appeal from a summary judgment upon less than all of the claims.

The action was commenced by the plaintiff, Park District of the City of Bismarck, hereinafter referred to as Park District, to quiet title to the North Half of the Southwest Quarter, the Southwest Quarter of the Southwest Quarter, of Section 8, Township 138, Range 80, and Lots 1 and 2, and the Northeast Quarter of the Northwest Quarter of Section 8, Township 138, Range 80, Burleigh County, North Dakota. In its complaint, the Park District also alleges that the defendant William R. Mills, individually and with others associated with him unknown to the plaintiff, has wrongfully occupied the above-described land. The plaintiff prays that title be quieted in it as against all of the named and unknown defendants, that the plaintiff Park District recover possession of the premises and the value of the use, occupation, and waste thereof, together with the costs and expenses in connection therewith, and for such other and general relief as may be just. The defendants William R. Mills, Betty Mills, Margaret H. Erling and Louise Garske answered, denying the plaintiff's claim, admitting possession, and alleging several affirmative defenses. In addition, the named defendants have counterclaimed, in one instrument. In the counterclaim the defendants William R. Mills and Betty Mills ask that occupancy be quieted in them in the Northwest Quarter of the Southwest Quarter and the West Half of the Southwest Quarter of the Southwest Quarter of said Section 8. The defendant Louise Garske asks that occupancy to the Northeast Quarter of the Southwest Quarter and the East Half of the Southwest Quarter of the Southwest Quarter be quieted in her. The defendant Margaret H. Erling asks that title to the North Half of the Northwest Quarter (which plaintiff describes as Lot 1 and the Northeast Quarter of the Northwest Quarter), and the Southwest Quarter of the Northwest Quarter (which

plaintiff describes as Lot 2), of said Section 8, be quieted in her.

The Park District replied to the counterclaim, denied their claims, and pleaded affirmative defenses.

All other defendants are in default.

The plaintiff Park District moved for a summary judgment pursuant to Rule 56, N.D.R.Civ.P., on the question of title and right to possession. The trial court, seeing no just reason for delaying its entry of final judgment on the claims of title to and for the immediate possession of the real property described in the complaint, considered the pleadings, the affidavits and exhibits submitted in support of and in resistance to the motion, as well as the written briefs filed by the plaintiff Park District and the answering and counterclaiming defendants, found that there is no genuine issue of fact on the issues of title and possession, and concluded that the plaintiff is entitled to a summary judgment upon these issues as a matter of law. It therefore entered an order granting summary judgment upon less than all claims, and provided that the issue on the question of damages remain for trial, and placed it on the court calendar. Final summary judgment quieting title in the plaintiff and directing immediate possession was entered, and it is from this judgment that the defendants William R. Mills, Betty Mills, Margaret H. Erling and Louise Garske have appealed.

In support of its motion for summary judgment, the Park District submitted copies of two United States patents, one describing the North Half of the Southwest Quarter, the Southwest Quarter of the Southwest Quarter of said Section 8, Township 138 North of Range 80 West, dated October 7, 1965, the other describing Lots 1 and 2 and the Northeast Quarter of the Northwest Quarter of Section 8, Township 138 North of Range 80 West, dated January 21, 1966. Both of the patents convey the land described therein to the City of Bismarck, North Dakota, on behalf of its

Park District, to use as a public park. The appellants admit that both patents were issued and recorded.

The supporting affidavit filed by the Park District also contains additional facts supported by attached copies of papers referred to in the affidavit, but we do not allude to these at this time, as they are set forth for the purpose of refuting or explaining claims that the Park District anticipated would be asserted in the opposing affidavit to be filed by the appellants. Reference to them will be made later.

We now turn our attention to the opposing affidavit filed by the appellants. Only one opposing affidavit was filed. It is sworn to by William R. Mills, who is a defendant, counterclaimant, and attorney of record for the answering defendants. We have examined this affidavit and find that it sets forth no facts whatsoever relative to the North Half of the Southwest Quarter and the Southwest Quarter of the Southwest Quarter of said Section 8, to which lands the appellants William R. Mills, Betty Mills, and Louise Garske claim a right to occupancy. The only facts set forth therein pertain to Lots 1 and 2, and the Northeast Quarter of the Northwest Quarter of Section 8, which is claimed by Margaret H. Erling.

The affidavit avers the following as facts: That on April 6, 1872, one Carey H. Ireland settled on the unsurveyed land and built a house; that in October of that year the land was surveyed. The house built by Ireland and an old steamboat landing and warehouse are shown on the plat and original survey notes, a copy of which is averred to be on file in the office of the State Water Commission. On March 13, 1873, the plat was approved by the Surveyor General, and within the required ninety days, to wit: on the 13th day of May, 1873, Mr. Ireland filed a declaratory statement in the Pembina land office. That on August 18, 1873, Mr. Ireland turned in his military bounty land warrant and paid the sum of $66.40 to the Pembina land office and re-

ceived his final receipt. In 1874 the land office was moved from Pembina to Bismarck, North Dakota, and records were lost in the transfer. On November 22, 1875, the Commissioner wrote the Register and Receiver at Bismarck, stating in part:

> Affidavits have been filed in this office to the effect that the duplicate receipts in certain entries of land made at your office have been lost, and with said affidavits a request that patent issue to the parties who are alleged to have made the respective entries. * * * The second entry was given by Carey Ireland of Lots 1 and 2 of the E ½ NW ¼ 8–138–80.

On August 30, 1873, Ireland gave warranty deed to Walter C. Bacon. Bacon sold the land to Lake Superior & Puget Sound Land Company. The land was assessed to the Lake Superior & Puget Sound Land Company for several years following statehood, and the taxes were paid by them except in 1889, and for several years the taxes were paid by the State of North Dakota. However, in 1897 the taxes were paid by Minnesota Title Insurance & Trust Company. In 1913 the taxes were purchased by K. B. Ferris, and in 1919 she obtained a tax deed to the land. K. B. Ferris in turn conveyed the land by warranty deed to Herman Erling in 1959. Herman Erling died in 1962, and the trustees, executors and heirs of the Herman Erling estate conveyed the land to Margaret Erling, his widow. (We assume Margaret Erling is one and the same person as the defendant Margaret H. Erling.) The affidavit also avers that after the said Herman Erling obtained the land, he did certain work upon the land, consisting of clearing a field one-half mile long and about 40 acres in size. This field was planted to alfalfa. He also engaged a surveyor who ran the boundary lines, following which Mr. Erling cleared and made roads and fills required to utilize the property, using heavy equipment. That recently there was erected upon the land a steel building at a cost of in excess of $1,500.00.

The affidavit also avers that said Lots 1 and 2 had been submerged by the Missouri River prior to 1883, and that the 1891 survey shows that on the date of statehood (1889) the main channel of the Missouri River was located in the middle of the East Half of the West Half of Section 8.

The affidavit also avers that in 1882 the land was sold for taxes to one J. O. Holleenbold, who was probably one and the same person as the Edward Holland who in 1882 received a deed from Erastus A. Williams and his wife, and that in 1885 Edward Holland conveyed the west edge of the Northeast Quarter of said Section 8 to one Thomas Lowry who was president of the Soo Line Railroad which controlled the Lake Superior & Puget Sound Land Company. It is also averred that Erastus A. Williams at one time was Surveyor General, having been appointed by President Harrison, and reappointed by Presidents McKinley and Roosevelt.

Some of the questions that arise in this action were before us in Perry v. Erling, N.D., 132 N.W.2d 889–899, in which we said:

> The defendants Erling et al. thus rest their claim of title upon a tax deed which was issued to the holder of tax sale certificates, subsequent to the levy of taxes upon the equitable interest of an assignee of a receiver's receipt. This equitable interest was defeasible in nature, and it, and any tax deed issued pursuant to its sale, would become void upon the cancellation of the receiver's receipt or the issuance of a patent to another entryman. 2 Patton on Titles Sec. 293 (2d ed. 1957). The questions of whether the receiver's receipt should be cancelled or whether a patent should be issued are wholly within the jurisdiction of the Department of the Interior of the United States and are now at issue in a proceeding before the Secretary of the Interior. This court is therefore without jurisdiction to make an adjudication that defendants Erling et al. have title. However,

since the record shows that the defendants Erling et al. are in possession of the land under color of title, they are entitled to have that possession protected until the issue of title is decided by the Department of the Interior of the United States. They are therefore entitled to an injunction enjoining the plaintiff and the other defendants from interfering with that possession until such time as the issue of title is decided. Zimmerman v. McCurdy, 15 N.D. 79, 106 N.W. 125.

Since our decision in Perry v. Erling, supra, it now appears the land has been conveyed by the representatives and heirs of the Erling Estate to the defendant Margaret H. Erling, and United States patent has been issued and delivered to the City of Bismarck, North Dakota, on behalf of its Park District. It also appears from the proof submitted attached to the affidavit of the Park District in support of the motion for summary judgment that the proceedings before the Secretary of the United States Department of Interior were decided on December 16, 1965. This decision denied the claims of Margaret H. Erling, and it has become final. Thereafter the patent was issued. The respective decisions of the land office manager of the Department of Interior, Bureau of Land Management, dated June 8, 1962, of the branch of land appeals, Division of Appeals of the Bureau of Land Management, dated January 24, 1963, and of the office of the Secretary of the United States Department of Interior, dated December 16, 1965, are attached as exhibits to the Park District's affidavit in support of the motion for summary judgment. An examination of these decisions discloses that all of the facts set forth in the affidavit submitted in opposition to the motion for summary judgment were submitted in support of the objections made in the proceedings before the Bureau of Land Management, and considered by its land office, its branch of land appeals, and by the Secretary of Interior acting through the solicitor of land appeals, and that thereafter, when the decision became final, the United

States issued to the City of Bismarck on behalf of its park districts the United States patent upon which the plaintiff, Park District, relies in this action.

All of the claims made by the appellant Erling in this action rest upon the legal effect of the receiver's receipt issued to Carey H. Ireland on August 18, 1873. We said, in Perry v. Erling, supra, in respect to this receipt:

> * * * This equitable interest was defeasible in nature, and it, and any tax deed issued pursuant to its sale, would become void upon the cancellation of the receiver's receipt or the issuance of a patent to another entryman.

These questions, we held, were wholly within the jurisdiction of the Department of the Interior of the United States and were then at issue in a proceeding before the Secretary of the Interior. The Secretary of the Interior, by the decision of its solicitor, in part stated:

> On August 5, 1964, the Department in Estate of Herman C. Erling et al. (A–29941), rejected the claim of the Erlings to lots 1 and 2 and the E ½ NW ¼ sec. 8 based on the location of the land by one Carey H. Ireland since Ireland's location was never perfected and Ireland, therefore, never became entitled to a patent to the land.

> The claim of the Erlings to the land based on a warranty deed said to have been given by Erastus A. Williams to Edward Holland in 1882 was found to be without merit because the Erlings did not connect either Ireland or themselves with it and because the Erlings did not even suggest that the deed was a link in the chain of title which they asserted.

The decision then considers the third assertion of ownership based upon the tax deed issued in 1919 to Erling's predecessor and continued possession of the land and payment of taxes until 1959 upon which an application was made to purchase the land

under a color of title act of the Federal government. Applications were made under a Class 1 claim, and also Class 2 claim, and it was found for reasons stated in the decision that neither was allowable and, therefore, they were rejected. However, Margaret H. Erling was allowed 45 days from the date of that decision to submit additional evidence, but no additional evidence has been submitted and the decision has become final.

■ The appellant Erling argues that the United States Supreme Court, in the case of Potter v. United States, 107 U.S. 126, 1 S.Ct. 524, 27 L.Ed. 330, held that the transfer of title to Erling's predecessor cannot be questioned and that the same is now res judicata by that decision. We have reviewed this decision and cannot see how it governs this Court in this case. The Potter decision merely holds that the local land officers, being the receiver and the register, were not required to meet and jointly consider the proof of settlement and cultivation offered by claimants under the pre-emption laws, and that where the receiver had charged himself with money which he or during his absence his authorized agent had received as the purchase price of public lands entered pursuant to pre-emption laws but had not paid the money over to the United States and suit is brought on his official bond, his surety cannot defeat recovery by setting up irregularities in a proceeding by which the entry of the land was allowed. Although the time period and the land office involved in that action coincide with the time that the receiver's receipt was issued to Carey H. Ireland and the land in question was within the geographical area served by the land office, there is no reference in the opinion as to the particular land, nor to the pre-emptor Ireland. In other words, the Potter case was between the United States and the receiver's surety, and did not involve the question of validity of receiver's receipts issued to pre-emptors during the period in question. The appellant quotes the following language from the case:

* * * If any objection could be raised to the transfer of title to the pre-emptors, it could be made by the United States only. But the United States makes no objection. On the contrary, all objection is waived by the bringing of this suit by the government to recover the moneys paid by the pre-emptors for their lands.

The court then continues and finds that therefore the moneys are public moneys. They belong neither to the receiver nor to the pre-emptors, and must consequently be the property of the United States. It is not denied in this case that the money was paid nor that the receipt was issued and received, but that Ireland's right to a patent was never perfected and he never became entitled to it. His claim was not vested but merely contingent. It has been held that one who abandons a lawful entry cannot recover the money which he paid the land officers to initiate it. 42 Am.Jur., Public Lands, Sec. 90. It appears to us that the proper place to have urged this argument, if it has merit, was in the proceedings before the Bureau of Land Management and the Department of Interior.

■ The keystone to the appellants' claims is the receiver's receipt, and whether the entryman Ireland had performed all of the statutory prerequisites under the pre-emption laws as they then existed. The Bureau of Land Management, Division of Appeals, found that the appellant Erling had failed to prove that the pre-emptor Ireland had erected a dwelling upon the land, which was a statutory prerequisite. In other words, it appears that although the pre-emptor Ireland had made payment within the required time, there was no evidence sufficient to constitute proof that he had made necessary improvements upon the land as required by statute within the permissive period. There was a failure of pre-emption proof, although there was proof of payment. These are questions of fact of which the Land Department had exclusive jurisdiction. They involve issues between

the pre-emptor and his successors and the Federal Government. Under the pre-emption laws, the entryman was obliged to perform all of the statutory prerequisites before he could acquire any vested interest of which he could not be deprived in the land entered by him. 42 Am.Jur., Public Lands, Section 21. In Forman v. Healey, 19 N.D. 116, 121 N.W. 1122, we held in the syllabus of that case as follows:

4. The decision of the Land Department upon controverted questions of fact involved in the cancellation of an entry, and in awarding the land to the party entitled thereto, is final and conclusive and binding on the courts, provided the parties interested have been heard, or have had an opportunity to be heard.

The proceedings before the Bureau of Land Management, hereinafter called the Land Department, in this case arose as a result of an application being made by the Park District of the City of Bismarck on August 7, 1961, to the United States of America, under the Recreation and Public Purposes Act of June 14, 1926, for a patent to the land in question. Pursuant thereto, notice of the application was published, notifying all persons who had objections to the issuance of the patent to file their objections within sixty days from January 17, 1962. Within the time provided, the appellant Louise Garske entered her appearance before the Bureau of Land Management, filed her objections, and claimed ownership of the Northeast Quarter of the Southeast Quarter and the West Half of the Southwest Quarter of said Section 8. Within the time provided, objections and claims to ownership were also filed by Herman C. Erling, Margaret H. Erling, William R. Mills and Betty Mills, to the granting of the Park District's application. The said Margaret H. Erling, with her husband, Herman C. Erling, (since deceased), joining, alleged that they were the owners in fee of the Northwest Quarter of said Section 8. William R. Mills and

Betty Mills, his wife, also objected and claimed the right to possession of the Northwest Quarter of the Southwest Quarter and the Southeast Quarter of the Southwest Quarter of Section 8. Thereafter, after considering the objections made by these appellants, the Bureau of Land Management Land Office located at Billings, Montana, issued its written decision on June 8, 1962. The decision denied the claims of all of these appellants, and ordered that a patent issue to the Park District of all the lands in issue in this action. Appellants Louise Garske, William R. Mills and Betty Mills did not appeal. However, the appellant Margaret H. Erling appealed the decision of June 8, 1962, and this appeal was heard by the Division of Appeals of the Bureau of Land Management, Washington, D.C. It rendered its decision on January 24, 1963, and affirmed the decision of the Bureau of Land Management of Billings, Montana dated June 8, 1962, denying the claims of Margaret H. Erling. Margaret H. Erling then appealed from the decision of January 24, 1963 to the Secretary of the Interior, and a written decision was rendered on December 16, 1965. This decision affirms the decision appealed from January 24, 1963, and it also rejects appellant Margaret H. Erling's Class 1 and Class 2 claims under the Color of Title Act. These claims were first made to the Secretary. The last decision has become final. Thereafter, on January 21, 1966, the United States issued its patent.

It appears from the various decisions of the Land Department and the Secretary of the Interior that evidence was submitted on each material question raised by the appellants in this action, and that these questions were determined in the contest between the appellants and the Park District in the proceedings had before the Land Department. We said in Forman v. Healey, supra, that it is a well-settled rule that the decision of the Land Department upon controverted questions of fact is final and conclusive, and the courts will not inquire into or review it, and that

The Land Department is the only tribunal intrusted by Congress with the power to decide these questions or with authority to dispose of this land, and it had jurisdiction to hear and decide which of these parties was entitled to the land, and, it having decided adversely to appellant, he can obtain no relief in the courts.

The appellants cite several cases supporting the view that proceedings in the Interior Department are prerequisites to court jurisdiction, but its decision is not res judicata. These cases are not in point here. They are cases in which it was found that the party making the claim had acquired vested interest in the land and became the equitable owner thereof, and that thereafter patent was issued to another. We find there are also cases that provide that state courts have jurisdiction dealing with possession of the land prior to the issuance of a patent, or to enforce contracts between parties concerning the land, or where the cases are affected with fraud or linked with a trust. There is also authority that an adjudication by the Land officers which authorizes the entry of land is subject to revision in the courts where there is a showing that the entry was obtained by fraud or false testimony as to settlement and cultivation. It is stated in 42 Am.Jur., Public Lands, Section 69, as follows:

In the absence of some specific statute to the contrary, matters which are committed to the General Land Office for regulation and decision are beyond the jurisdiction of the courts while such matters are pending in the Department. The jurisdiction of the Land Department ceases, however, with the issuance of a patent or when the legal title otherwise passes out of the United States or the state, and controversies relating to public lands or those of which the title was derived from the nation or the state become matters for the courts.

See also 42 Am.Jur., Public Lands, Section 70, wherein it is stated:

Obviously, it is of the highest importance that the decisions of the courts respecting public lands should be in harmony with the rulings of the Land Department. And while courts of justice have no power to revise or reverse what Congress or commissioners acting under its authority have done in confirmation of titles of public lands, they may, in a proper case, act in aid of the jurisdiction of the Land Department where this can be done without deciding a controversy of which the Land Department has exclusive jurisdiction, or where, the jurisdiction of the Land Department has terminated, and the issues remaining are determinable under state law.

We find that the issues before the court were determinable by the Land Department and that the decisions made by the respective divisions of the Land Department were wholly within the jurisdiction of the Land Department and the Secretary of Interior who has been entrusted by Congress with the power to decide these questions; that the Secretary had the jurisdiction to hear and decide which of the parties was entitled to the land, and having decided adversely to the appellants, they can obtain no relief in the courts on the same issues

73 C.J.S. Public Lands:

Section 170:

Under the provision of the Constitution of the United States which declares that congress shall have power to dispose of, and make all needful rules and regulations respecting, the territory and other property belonging to the United States, the control of the public lands has been placed by statute under the secretary of the interior; and in order to aid him in the performance of this duty a land department has been created at the head of which is the director of the bureau of land management, formerly designated as the "commissioner of the general land office." To it, as a special tribunal, congress has confided the execution of the laws which regulate the surveying, the selling, and

the general care of the public lands; and, in the absence of some specific provision to the contrary in respect of any particular grant of or other provision respecting the public lands, its administration falls wholly and absolutely within the jurisdiction of the land department.

The land department is vested with substantially exclusive jurisdiction to determine, in the first instance, all questions of fact respecting the acquisition, disposition, and control of the public lands, as long as the legal title thereto remains in the United States.

Section 179:

a.

The land department of the United States is invested with authority to hear and determine claims to the public lands subject to its disposition, and to determine all questions of fact that may arise in any controversy respecting the right of any person to receive a patent for any of the public lands, and to execute its judgments by issuing patents to the parties entitled to them.

d.

The decisions of the land department on the issues presented for its consideration at a hearing concerning contested claims to the public lands are presumably right, and are conclusive as between the parties to the contest and their privies, with respect to matters within the jurisdiction of the department, and are not subject to collateral attack, although such decisions are subject to review in a direct proceeding.

Section 184:

a.

Generally, the courts should give full effect to the decisions of the land department as long as they stand unimpeached, or when they become final, and decisions of the department on matters within the scope of its authority ordinarily may not

be collaterally attacked, but matters not at issue or decided are not concluded.

Section 202:

A patent regular on its face and issued by the land department for land within its jurisdiction and power of disposition is not open to collateral attack, but a patent completely void may be the subject of a collateral attack.

What we have said above disposes of the appellants' attack upon the validity of the patent.

Appellants, however, contend that the patents have been improperly issued, that the Park District was not entitled thereto, and that therefore the patentee should be decreed to hold the legal title in trust for the appellant Margaret H. Erling who is really entitled to the land, and be compelled to convey the land to her. As to the remaining appellants, it is urged that they are entitled to possession, and that the decree of the trial court should have so provided. It is argued in support of these contentions that the patents were granted due to fraud, mistake, undue influence, without due process, and contrary to law; that the plaintiff, Park District, purchased a pretended title; that the predecessors in interest of Margaret H. Erling did make and file a declaration of intent, did settle on the land and improve the same in compliance with the pre-emption statute; that the plaintiff, Park District, is estopped by laches in equity from contesting the appellant Erling's title and the remaining appellants' right to possession on the ground that the decision of the Land Department on questions of law which arose out of the evidence is not conclusive upon the courts and is subject to review, and that the action on the part of the Department based on the misconstruction of the law may be corrected by the courts.

■ The jurisdiction of the Land Department ceases with the issuance of a patent, and controversies relating to patented land become matters for the courts.

42 Am.Jur., Public Lands, Section 69; 73 C.J.S., Public Lands § 186.

■ However, the court should give full effect to the decisions of the Land Department when they have become final, as decisions on matters within the scope of its authority ordinarily may not be collaterally attacked in a court proceeding. 73 C.J.S. Public Lands § 184; 42 Am.Jur., Public Lands, Sections 57, 60; Forman v. Healey, supra.

Most of the issues which the appellants raise in their arguments in this Court in support of the trust theory were issues which were submitted to the Land Department and necessarily decided by it at the hearings heretofore described. Therefore, this is an attempt at a collateral attack on those decisions. In the hearings before the Bureau of Land Management and the Department of Interior it was found and determined that the lands were public domain. Such findings state their records show that Carey H. Ireland located an entry on the said lands based on military bounty land warrant in the name of one Esther Wykoff; that the location was a pre-emption entry under the Act of September 4, 1841 (5 Stat. 453), which provided for entry of not more than 160 acres of public land by a settlor thereon upon payment of the minimum price of the land; and that a declaratory statement was required, and while it appears that full payment was made by the pre-emptor Ireland, the entry was not allowed for failure to make the necessary pre-emption proof of continuous residence and erection of a dwelling on the land and improvements. In an analysis of the pre-emption statutes, the Supreme Court of the United States, in Northern Pacific Railway v. De Lacey, 174 U.S. 622, 19 S.Ct. 791, 43 L.Ed. 1111, stated:

We thus find that since 1871 all claimants of pre-emption rights lost those rights by operation of law, unless within thirty months after the date prescribed for filing their declaratory notices they made proper proof and payment for the lands claimed. The filing of their declaratory statement and the record made in pursuance of that filing became without legal value if within the time prescribed by the statute proper proof and payment were not made. Whether such proof and payment were made would be matter of record, and if they were not so made the original claim was cancelled by operation of law, and required no cancellation on the records of the land office to carry the forfeiture into effect. The law forfeited the right and cancelled the entry just as effectually as if the fact were evidenced by an entry upon the record. The mere entry would not cause the forfeiture or cancellation. It is the provision of law which makes the forfeiture, and the entries on the record are a mere acknowledgment of the law, and have in and of themselves, if not authorized by the law, no effect. The law does not provide for such a cancellation before it is to take effect. The expiration of time is a most effective cancellation.

In such a case as this, where the forfeiture occurs by the expiration of the thirty months within which to make proof and payment, the record shows that the claim has expired; that it no longer exists for any purpose, and therefore it cannot be necessary in order that the law shall have its full operation that an acknowledgment of the fact should be made by an officer in the land office. The law is not thus subject to the act or the omission to act of that officer.

The appellants other than Margaret H. Erling make no claim to ownership, but claim they are entitled as against this plaintiff to possession. According to the proof submitted in support of the motion for a summary judgment, the Bureau of Land Management found that all of the lands in issue in this action were public domain lands, and that these lands, together with other lands, were included in Public Land Order 1312, Serial Number Montana 013826(ND), approved by the Secretary of the Interior July 6, 1956, and published in

the Federal Register on July 13, 1956, whereby these and other lands were withdrawn from all forms of appropriation under the Public Land Laws and reserved for use in connection with the Oahe Reservoir project under the the supervision of the Department of The Army as authorized by the Flood Control Act of December 22, 1944 (58 Stat. 887). Thereafter the Department of The Army filed its notice of intention to relinquish certain lands in Public Land Order 1312, and consented to favorable classification of such lands pursuant to the Recreation and Public Purposes Act and the applications of the plaintiff, Park District. Thereafter a partial revocation of Public Land Order 1312 in accordance with the Army's relinquishment was processed, and this action resulted in Public Land Order 2628, approved by the Assistant Secretary of the Interior on March 12, 1962. This order included the lands in question, and also revoked as to these lands Public Land Order 1312, and stated that the lands in the order described in this action would not be subject to any other form of disposal under the Public Land Laws until final action was taken on the applications of the plaintiff, Park District. These lands were classified on December 15, 1961 for sale under the Recreation and Public Purposes Act, as amended. 43 U.S.C. 869, et seq. By a decision dated December 21, 1961, the Bureau of Land Management approved the two applications of the plaintiff, Park District, and authorized publication of the notice of the pending applications to purchase the land under the Recreation and Public Purposes Act. Pursuant thereto the hearings and appeals heretofore referred to were processed, and resulted in the Bureau of Land Management granting the patents to the plaintiff, Park District, as heretofore described. The patents limit the use as a public park, and are made subject to the provision, reservation and condition that the United States has a right to flood these lands without recourse to the patentee or its assigns; provide that the patentee agrees for itself and its successors in interest that

a declaration of termination in whole or in part of this grant shall, at the option of the secretary or his delegate, operate to revest in the United States full title to the lands involved in the declaration; and that these reservations, together with other reservations, conditions and limitations set forth in the patent, constitute a covenant running with the land. The patents also provide that if the patentee or its successor in interest does not comply with the provisions of the approved plan of development for park purposes filed on October 2, 1961, that the plaintiff, Park District, or by any revision thereof approved by the Secretary of the Interior or his delegate, the said Secretary or his delegate after due notice or opportunity for hearing may declare the terms of this grant terminated in whole or in part, or in lieu of such forfeiture of title, require the patentee or its successor to pay to the United States an amount equal to the difference between the price paid for the land by the patentee and fifty per cent of the fair market value of the patented lands, to be determined by the Secretary or his delegate as of the date of the issuance of the patent, plus compound interest computed at four per cent beginning on the date this patent is issued. This is a restricted patent, granted for a public, and not a private, purpose. If the Park District were directed to convey to the appellants, the Department of Interior could cancel the patent pursuant to its covenants.

■■ The appellants' next group of defenses is in regard to the several state statutes of limitations. Since the proofs filed show that the land was made part of the public domain and belonged to the United States until the issuance of the patents in October of 1965 and January of 1966, the state statutes of limitations did not run because the lands belonged to the United States, and the plaintiff, Park District, made no claims thereto until it received its patents. Under these circumstances, state statutes of limitations begin to run only on the issuance of a patent. 42 Am.Jur., Pub-

lic Lands, Section 88. Adverse possession or prescription cannot run so as to be available against the Park District until the patents are issued where it makes no claim except that based on the patents received from the government. 55 A.L.R.2d 554–567. Since the issuance and delivery of the patents in 1965 and 1966, sufficient time has not passed to successfully invoke any of the state statutes of limitations.

The appellants also argue that since the land was taxed by the State and tax title was obtained by one K. B. Ferris, in 1919, and later, through mesne conveyances, the appellant Margaret H. Erling obtained the title, that the plaintiff, Park District, in commencing this action was governed by Section 57–45–10, N.D.C.C. This statute requires that whenever an action is brought to test the validity of any deed issued and delivered by the county to the purchaser through tax deed proceedings, the court shall not proceed to trial until the party assailing the validity of the tax deed makes a deposit of the amount of all delinquent taxes and unpaid taxes, and it is asserted that because no such deposit was made in this case, the trial court was without jurisdiction to try the case. We find this statute is not applicable here. The purpose of the statute is to require the payment of taxes validly levied where the proceedings on such valid taxes to take tax title were invalid. The public domain or public lands owned by the United States and held for the purpose of distribution or sale are not subject to taxation by the State so long as they are held by the United States. 51 Am.Jur., Taxation, Section 225. These lands were public domain lands until the patents were issued in 1965 and 1966, and long after the taxes referred to by the appellants were levied. This action was not brought to test the validity of the tax deed, but to assert its rights as original patentee of public domain lands.

The appellants also argue that the decision of the Department of the Interior and the Land Department was obtained by fraud, imposition and mistake. No proof has been adduced, although the appellants argue it is treated in the counterclaim and averred in the affidavit in opposition to the motion for summary judgment. They argue that because summary judgment cannot be granted where a material issue of fact is not determined, and the question of fraud, imposition and mistake is not settled by the proof adduced, it was improper to enter summary judgment.

Rule 9(b), N.D.R.Civ.P., states:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity * * *.

We have examined the pleadings and the affidavit referred to, and find that fraud, imposition and mistake are not stated with particularity; that in fact no reference is made thereto whatsoever. In the appellants' brief, reference is made to falsification of certain records by the Land Department, a persuasive telephone conversation by a senator with the person making the decision in the Land Department on the Park District application, and a charge that political pressure was used to obtain a favorable decision to the Park District. However, as previously stated, these are merely reasons argued in the brief of the appellants, and no proof whatsoever has been adduced in support thereof, nor has it been alleged. We find no merit to this argument.

The appellants have attacked the patents issued to the plaintiff, Park District, on two fronts. They contend that the patents are void and that the appellants are entitled to possession of the land. Secondly, the appellant Margaret H. Erling contends that if the patent to the land, which she claims, is valid, then the plaintiff, Park District, holds in trust for her, because her equitable title is superior to the plaintiff's legal title. The patents are regular on their face, and the appellants have the burden of proof to establish their

claims. The only claim not settled by the Land Department in its hearings is to the effect that the patents were fraudulently obtained. The claim that a patentee holds as a trustee on the ground of fraud must be definite and precise, and the claimant must show that the United States parted with its title and that such title has become vested in the party against whom it is sought to enforce the claimed equities. Such claimant must aver and prove every fact necessary to make out a perfect case and establish actual ownership by an equitable title superior to the legal title. It must also show that there was fraud or mistake and how it occurred, and where fraud is relied on, it must be alleged and proved that the fraud affected the decision of the Land Department in order to make out a case and establish actual ownership by an equitable title superior to the legal title. 73 C.J.S. Public Lands § 209e. The appellants have failed to sustain the burden of proof. In the first place, the appellant Margaret H. Erling has failed to establish equitable title, and secondly, all appellants have failed to prove facts showing that there was fraud or mistake or that it was relied on and affected the decision of the Land Department.

Appellants also make claim that plaintiff, Park District, is estopped by laches. However, we do not see how this defense is applicable, as plaintiff, Park District, did not apply for patent until August 7, 1961; thereafter notice of the application was given to the defendants, as hereinbefore described; when the Land Department had concluded its proceedings, including appellants' appeal to the Secretary of the Interior, it issued its patents in October of 1965 and January of 1966; and this action was commenced in February 1966. It does not appear that the Park District had any interest in the land, nor did it make claim thereto, prior to submitting its application on August 7, 1961, under the provisions of authorizing legislation and departmental rules of the Federal government.

The affirmative defense of estoppel has no support in the facts.

We find that the trial court was right in its determination that there is no genuine issue as to any material fact, and that it was correct in its decision that the plaintiff, Park District, is entitled to a summary judgment quieting the title as against these defendants and directing immediate possession of the lands.

The summary judgment is affirmed.

STRUTZ, C. J., and ERICKSTAD, KNUDSON and PAULSON, JJ., concur.

On Petition for Rehearing.

TEIGEN, Judge.

The defendant Margaret H. Erling has petitioned for a rehearing. The petition is limited to property claimed by her described as Lots 1 and 2, and the Northeast Quarter of the Northwest Quarter of Section 8. This is a portion of the tract described in the receiver's receipt issued to Ireland in 1873. There are no new issues raised in the petition that have not been considered and disposed of in the original opinion, with the possible exception of one to which we will devote some consideration.

The petitioner points to 43 U.S.C.A., Sec. 1165, the pertinent parts which provide as follows:

* * * That after the lapse of two years from the date of the issuance of the receipt of such officer as the Secretary of the Interior may designate upon the final entry of any tract of land under the * * * pre-emption laws, or under the Act of March 3, 1891, and when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent conveying the land by him entered, and the same shall be issued to him; * * *.

The petitioner argues that we must recognize, as to the receipt issued to Ireland, a significant matter of law contemporaneous with the inception of title was the two-year statute of limitations quoted above. We do not think so.

The record in this case discloses that the pre-emptor, Ireland, filed a declaratory statement on May 13, 1873, in which he stated the date of settlement was April 6, 1872, and thereafter he paid the required amount by surrendering a military bounty land warrant issued to Esther Wykoff and payment. A receipt was issued to him by the receiver on August 18, 1873. The record also discloses that the entry was not allowed because Ireland failed to make the necessary pre-emption proof and, therefore, the allowance was denied. The land remained a part of the public domain. The two-year statute of limitations was enacted in 1891, C. 561, Sec. 7, 26 Stat. 1098. It would be presumptuous for us to speculate that the Land Department adjudication denying the allowance was made after 1891, more than eighteen years after the issuance of the receipt. The record before us makes no such disclosure. In fact, it discloses that the lands in question were listed as public lands in the late 1880's on the records of the Land Department, which was after the issuance of the receipt and before the enactment of the statute. We believe it is reasonable to conclude the denial was made prior to that date.

For the petitioner, Margaret H. Erling, to successfully invoke the two-year federal statute of limitations, she has the burden to produce evidence to support it. This has not been done and, on the basis of the record in this case, we find no genuine issue as to any material fact on this question.

For these reasons, rehearing is denied.

STRUTZ, C. J., and ERICKSTAD, KNUDSON and PAULSON, JJ., concur.